Charles W. ROSS and Joy R. Powell,
Plaintiffs Below, Appellants,

v.

The NEWS–JOURNAL COMPANY, a Dela-
ware Corporation, Defendant
Below, Appellee.

Supreme Court of Delaware.

March 22, 1967.

Nicholas H. Rodriguez, of Schmittinger & Rodriguez, Dover, for appellants.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

Appellants brought suit in the Superior Court to recover damages for certain allegedly libelous articles which appeared in defendant's newspapers. The Court below granted defendant's motion for summary judgment, and plaintiffs below have appealed.

▮ There seems to be no disagreement concerning the basic rule of law applicable to the case. It is agreed that appellants were public officers within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. It is conceded that this case is governed by the principles laid down in the New York Times case, as further explained in Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, and Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597. Those cases stand for the proposition that a public officer may not recover damages for a defamatory falsehood relating to his official conduct, unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. This rule is binding upon us by virtue of the First Amendment to the Federal Constitution which was made applicable to the States by the Fourteenth Amendment. In short, to be actionable, the statements must be false and must be made with knowledge of their falsity or with reckless disregard of their truth or falsity.

Because of the foregoing concessions, the only issue to be determined is whether the uncontradicted evidence in the record, viewed most favorably to the plaintiffs, justifies the holding that the defendant below was entitled to judgment as a matter of law.

The Court below held that the undisputed evidence in the record shows that the articles were essentially true, but, even assuming falsity, there is no evidence of "actual malice", as defined in the Times case,

supra. To test this holding, we must review the evidence at some length. In summarizing it, we will consider it in the light most favorable to appellants.

For some years prior to 1965, there was considerable criticism in Delaware of our Justice-of-the-Peace system. News reports and editorials appeared in the public press; specific instances of alleged improper conduct of those Courts were publicized from time to time in defendant's papers. Public concern lead ultimately to the approval of an Act of Legislature on March 31, 1965 (55 Del.Laws, Ch. 20), which made many changes in the system. The articles here involved were published in November and December, 1964, during the period when the prior system was under attack.

■ In the year 1964, appellant Ross was a Justice of the Peace with an office in an unincorporated community known as Little Heaven, about one mile south of Magnolia and three miles west of Bowers. Mr. Ross was the nearest available Justice to those towns and apparently tried many charges of violations of their ordinances when no Alderman [1] was available, pursuant to the charter provisions of those towns. Appellant Powell is the daughter of Mr. Ross. She then lived in a house directly behind her father's office. She acted as Clerk of her father's Court.

In the spring and summer of 1964, Mr. Ross was ill and was in and out of a hospital several times. During his absence no one was available to hear cases at his office. In the fall, he was still convalescing, although he did hear some cases. In July of that year, Mrs. Powell was appointed to serve as Alderman for the town of Bowers. Her selection was made in spite of the fact that the town charter requires that the Alderman be a resident of the town. 53 Del.Laws Ch. 279 § 11(f). She, of course, was not a resident of, nor did she maintain an office in, the town itself. She thereafter heard cases at her father's office when brought in by the Bowers town police. When Mr. Ross returned to work, those cases would be heard by him or her, depending upon which one was present or "found it more convenient".

On November 16th, 1964, Miss Anne Clements was a newspaper reporter in appellee's employ at its Dover office. She heard that Mrs. Powell had committed a man named Cane to jail for 100 days. Miss Clements investigated and learned that the commitment was signed by Mrs. Powell as Alderman for Bowers; it showed that the offense occurred outside the Bowers town limits.

Miss Clements also heard of a case involving a man named Teer. She interviewed him and was told that he had been arrested about three miles outside of Bowers for a motor vehicle offense, taken before Mrs. Powell and fined $10. He stated that his money had been refunded the next day because Mr. Ross told him that the offense was beyond Mrs. Powell's jurisdiction.

Miss Clements also learned that two State Troopers had been called to Mr. Ross's office on the night of November 15th in connection with a warrant "sworn out" by a Mr. Killen. She learned that Mr. Killen had signed a warrant at that office "before Mrs. Powell" but that the officers would not honor it as it was "not legal and not filled out completely", and that the officers had advised Mr. Killen to return later and sign another before Mr. Ross.

Miss Clements then went to see Mr. Ross. What was said between them is disputed, but he apparently did deny that his daughter had tried any cases beyond her jurisdiction. She also went to see Mrs. Powell,

---

1. In Delaware, an Alderman is a person appointed by a municipal governing body to try and determine charges of violating ordinances of the municipality. The charter provisions mentioned are typical of those found in most Delaware municipal charters.

who apparently made a similar statement. Miss Clements did not examine the dockets.

The reporter then informed appellee's State Editor, Mr. Ordovensky, of the information she had secured. The two of them prepared an article which appeared in the Morning News of November 19th, 1964 under the headline "DAUGHTER ACTS FOR JP". Its lead sentence stated "The daughter of a Kent County Magistrate has been sitting in for her father hearing cases of traffic violations, state police and prison records indicate". The article was seen before publication by appellee's Executive Editor, at whose suggestion the last six words were included. The article went on to describe in some detail the Cane and Teer cases and the Killen warrant, stating that the warrant had been signed by Mrs. Powell. It quoted Mrs. Powell's statement that she was acting within her jurisdiction as Alderman for Bowers. It pointed out, however, that the cases involved offenses committed outside the town limits, that the town charter requires the Alderman to be a resident of the town and that Mrs. Powell was holding Court at her father's office several miles away. It also stated (incorrectly) that the town charter specifically prohibits the Alderman from levying fines in excess of $10 or imprisoning a defendant for more than ten days and that this jurisdiction included only cases of disturbing the peace and drunken or disorderly conduct, and did not include traffic offenses. Those incorrect statements were based upon Miss Clements' examination of the town charter as it existed prior to January 2, 1962, when it was revised. She explains this error by the fact that her examination of the laws was limited to the bound volumes of Delaware Laws and that the 1962 revision had not at that time been issued in bound volumes. As will be seen, those misstatements were corrected promptly in later articles.

In appellee's evening paper issued the same day, another article appeared under the headline "DAUGHTER OF JP GAVE DRIVER JAIL". It repeated most of the statements contained in the earlier article. However, those which referred to the Alderman's power to levy fines or imprisonment, or to decide traffic offenses, were omitted and replaced with a statement that a new charter had been adopted in 1962 which gave the Alderman the powers of a Justice of the Peace, but did not change the residence requirement.

The next morning, the Morning News gave the headline "JP DAUGHTER FUROR RECALLS 1960 RULING". The article which followed stated that the Bowers charter had been amended in 1962 and the Alderman's powers broadened, but pointed out that there had been a Court ruling made in 1960 which upset a similar amendment. The article referred to previous ones and discussed the case of Petition of Carter, 2 Storey 316, 157 A.2d 588,[2] and its application to Mrs. Powell's jurisdiction. A similar article appeared in the afternoon's Evening Journal under the heading "BOWERS ALDERMAN'S JP POWER IN QUESTION". The Evening Journal of November 21, 1964 contained a cartoon showing a woman standing behind a Judge's bench thinking "NOW WHAT WOULD DADDY DO?". Under the cartoon was an explanatory statement to the effect that Mrs. Powell had been acting for her father while he was sick.

On December 3, 1964, the Evening Journal carried the report of a news conference with the Attorney General. It stated, inter alia, that the Attorney General was that day sending a letter to the Bowers Mayor and Council informing them that their Alderman has no power to hear cases of violations of State law. The article again indicated that she had heard some of her father's cases when he was indisposed.

2. In this case the Superior Court held that a statute was unconstitutional which attempted to confer jurisdiction of vio-

lations of state law upon an Alderman appointed by a town council. Art. 4 Del. Const. § 30, Del.C.Ann.

The final article appeared in the Evening Journal on December 4th, 1964 under the headline "MRS. POWELL EXPECTED TO RESIGN". It dealt with her failure to meet the residence requirements and referred to the previous articles. She did not in fact resign but did cease to hear cases.

After suit was started, considerable evidence was brought into the record through discovery. It was testified, without contradiction, that none of those individuals who took part in preparing the articles was acquainted with the plaintiffs prior to these events, had any actual malice or ill feelings towards them or was motivated by any intent to do them harm. The Bowers Alderman's docket was produced and showed that Mrs. Powell had tried a number of charges of violating state law. In addition to the Cane and Teer cases, there were seven instances during October and November 1964 in which, *according to the docket,* the offenses occurred outside the town limits. Her explanation in these cases was that the docket entries were intended to show the place of arrest rather than the place of offense. She testified that the evidence presented at the trials showed that the offenses actually occurred within the town limits. However, in five cases, the charge was speeding in a 45 mile-per-hour zone, yet the maximum speed limit in the town is 25 miles per hour.

Obviously, many of the specific statements contained in the various newspaper articles were true. Both the old and the new town charter required the Alderman to be a resident; both of them limited his jurisdiction to offenses committed within the town limits; Mr. Ross as the nearest Justice of the Peace had jurisdiction to try violations of Bowers' ordinances as well as violations of State law; Mrs. Powell was not a resident of the town and did try the cases in her father's office; an attempt, similar to the charter provision here, to confer jurisdiction over violations of State law upon an Alderman had been held in-

valid in the Carter case, supra. The statements concerning the Cane and Teer cases were substantially true.

In their brief, appellants charge falsity in several respects. We will discuss them individually.

■ First, appellee suggested that Mrs. Powell had no power to try violations of Bowers' ordinances. Appellants contend that she was a de facto Alderman. We do not understand how this contention has any bearing in this case; admittedly, she was not a de jure Alderman.

■ Secondly, appellee stated that prison and police records indicate that she tried magistrate cases. The answer to this is simply that they do show an exercise of jurisdiction beyond the scope of an Alderman's powers, at least to the extent that they show on their face that she tried traffic violations committed outside of the town.

■ Thirdly, appellee stated that the town charter limited her power to a trial of cases of disturbing the peace and drunken or disorderly conduct, and prohibited her from levying fines in excess of $10 or imprisonment for more than ten days. This statement was untrue; the reason for the mistake is stated earlier herein. It was retracted the same day and again the following morning. The circumstances negate any inference of "reckless disregard of truth or falsity".

■ Fourthly, appellee said that Mrs. Powell had signed the Killen warrant. Miss Clements had been told that Mr. Killen had signed it "before her", from which she undoubtedly inferred that Mrs. Powell had signed it. Again, the facts do not justify a finding of recklessness.

■ Fifthly, appellee charged that she was trying cases for her father. Admittedly, this was an inference drawn by the State Editor from the information then before him. He knew that Mrs. Powell had

acted in certain cases which he was fully justified in believing were beyond her jurisdiction; he knew that she claimed jurisdiction of them as Alderman of Bowers, although she was ineligible for that office; he knew that she was holding Court at her father's office. We do not decide whether the inference was fully justified; it is enough to say that it was not so unreasonable as to constitute a reckless disregard of its truth or falsity.

Finally, appellants object to the "implication" that they were dishonest and incompetent. These words were not used in any of the articles. The implication is drawn by appellants themselves. Whether the public generally would draw the same inference is unimportant at this time; our function, as stated above, is to determine whether the evidence is sufficient to warrant a jury in finding "actual malice" in the publication of any untruth.

We agree with the Court below that there is no evidence of actual knowledge of falsity in those statements which were incorrect, and that the evidence is insufficient to justify a finding of reckless disregard for their truth or falsity.

The judgment below must be affirmed.