BRECH, Appellant v. SEACAT et al., Respondents

(170 N.W.2d 348)

(File No. 10639. Opinion filed September 4, 1969)

**Richard R. Murphy,** Santa Ana, Cal., and Bruce, South Dakota, for plaintiff-appellant.

**Davenport, Evans, Hurwitz & Smith, Ellsworth E. Evans,** Sioux Falls, for Walter Seacat, defendants-respondents.

RENTTO, Judge.

In this action plaintiff seeks damages from a circuit judge for an alleged defamation. The judge moved to dismiss the plaintiff's complaint on the ground that as to him it failed to state a claim upon which relief could be granted. This was bottomed on the proposition that in the circumstances alleged he enjoyed absolute immunity. From a judgment granting the motion plaintiff appeals.

The defendant Walter Seacat is senior judge of the Fourth Judicial Circuit Court, a court of general jurisdiction. On April 17, 1964, he sentenced the plaintiff's husband Doyle Brech, Sr. to imprisonment in the state penitentiary on his plea of guilty of the crime of manslaughter in the first degree, arising out of the death of their daughter Betty. A few days later on April

24th the Judge wrote a letter addressed to the State Board of Pardons, the Warden of the Penitentiary, and the Department of Pardons and Paroles which he transmitted to the warden by mail and the warden placed in the inmate's file. Plaintiff does not allege any other publication. This letter is the basis of plaintiff's claimed cause of action. In our opinion in State v. Brech, 84 S.D. 177, 169 N.W.2d 242, it is referred to as Exhibit 2.

Plaintiff's complaint alleges the statements contained in the letter of April 24th which she claims libeled her. It is her position that they were false and maliciously made. Whether they are libelous is not here presented. They were assumed to be such for the purpose of the motion to dismiss. All of them relate to circumstances surrounding the commission of the crime of which plaintiff's husband plead guilty and his habits, disposition and reputation. It was the kind of information that the Board of Pardons and Paroles could be expected to consider in discharging its statutory duties concerning any clemency to be afforded plaintiff's husband.

This observation is corroborated by pertinent provisions in our criminal code and the rules of the board. SDCL 1967 23-60-1 requires the warden to promptly furnish to the Director of the Board of Pardons and Paroles a case history of each inmate. This the director is required to enlarge and complete so that it contains a life history of the inmate. In discharging this function the director is authorized to enlist the services of the sentencing circuit judge and others. SDCL 1967 23-60-3. The rules of the board state that one purpose of the hearing which they hold in these matters is to enable it to review all available history, medical, social, psychological, past and present difficulties of the inmate involved.

Under its rules before any application for pardon, commutation of sentence, or remission of fines shall be considered by it, written notice shall be given to the sentencing judge and he is requested to comment thereon or make a recommendation, and submit any information that he might deem relevant and pertinent in the board's deliberations. Moreover, for a period of

one year from the date of the judgment of conviction, SDCL 1967 23-57-8, he has jurisdiction to suspend the execution of sentence of the first felony offenders, which plaintiff's husband appears to be. SDCL 1967 23-57-5. If the judge suspends sentence he is required to furnish the director of the board all information available to him concerning the inmate involved. SDCL 1967 23-57-9.

When a person is convicted of a felony the judge is required to join with the state's attorney in an official statement of facts and circumstances concerning the crime involved and other facts and circumstances bearing on the question of whether the person sentenced is capable of again becoming a law-abiding citizen. SDCL 1967 23-48-37. This is furnished to the warden of the penitentiary when the convict is delivered there. The letter here involved, written a few days after the inmate was sentenced, is in the nature of an amendment of their official statement which they had prepared on April 19.

In her brief plaintiff states that "whether or not this letter and its contents had any relevance to the said Judge's duties, authorities, or performance as to the subject matter at hand would seemingly be the crux in the entire case." Her position is that in transmitting the letter in question Judge Seacat was not discharging an official duty. In support of this it is argued that his judicial function in the prosecution involving plaintiff's husband terminated with the passing of sentence and the execution of the official statement. This we think too narrow a view of the judge's official duties in a criminal matter.

The principle that a judge performing a judicial function enjoys absolute privilege when charged with defamation is well rooted in the common law. See Harper & James, Law of Torts, § 5.22; Prosser on Torts, 3d Ed., Ch. 21, § 109; 53 C.J.S. Libel and Slander § 104(d) (3); 33 Am.Jur., Libel and Slander, § 177; 42 A.L.R.2d, p. 825. Its foundation is public policy. The interests of society require that judges exercise their functions with independence and without fear of consequences.

With us this protection is included in the statutory grant of immunity to officials as a class. SDCL 1967 20-11-5, so far as here material, provides that: "A privileged communication is one made: (1) In the proper discharge of an official duty." This is the premise on which Judge Seacat based his motion to dismiss. As declared in SDCL 1967 2-14-12, concerning statutes generally, the privilege granted therein must be liberally construed to effect the legislative purposes.

In Restatement of the Law, Torts, § 585, from pages 225 to 229, it is written: " 'A judge or other officer performing a judicial function is absolutely privileged to publish false and defamatory matter in the performance of such function if the publication has some relation to the matter before him.' " In the comment appears the following:

> " 'a. The privilege of a judge engaged in the performance of his judicial function is absolute. Therefore, the personal ill will of the judge is immaterial. So too, it is immaterial that he knows the defamatory matter to be false. The public interest in securing the utmost freedom to those who preside over judicial proceedings or who otherwise perform a judicial function is so important as to preclude inquiry in a civil action into the motive or purpose of such an officer. Abuse of his official position by a judicial officer may subject him to impeachment, recall or removal, but it will not subject him to a civil action for defamation.

> " 'd. The judicial function is usually exercised in the course of judicial proceedings, that is, after the commencement or institution of such proceedings and before the termination therof. Thus, a judge is protected from liability for any statement of fact or comment which has any connection with a matter before him, whether it concerns the conduct of the parties, witnesses, or counsel who are participating in the trial or of a person not so participating. He is also protected from liability for anything said by him in the course of his instructions to the

jury and for any memorandum or entry made in his docket, and in any order, ruling or decision. It is immaterial whether the judicial proceedings are ex parte or inter parties or whether they are preliminary, interlocutory, or final in character. It is not necessary however, that the judge be engaged in the conduct of a trial or that he be participating in a judicial proceeding at the time of the defamatory publication. It is necessary only that he be engaged in the performance of a judicial function. He may be so engaged before the commencement of or after the termination of judicial proceedings or while in his judicial capacity he is discussing with counsel for prospective litigants judicial proceedings which, while then contemplated, are in fact never instituted.

" 'e. Relation of statement to proceedings. It is not necessary that the defamatory matter be relevant or pertinent to any issue before the court in a judicial proceeding. It is necessary only that it have some reference to the judicial function which the judge is performing. The privilege does not protect a judge who makes a personal attack upon the character of another which has no conceivable reference to the performance of the duties of judicial office. However, the protection is not lost by the mere fact that the defamatory publication is an indiscretion or a display of personal antagonism on the part of the judge or that it is not pertinent to the subject of the inquiry if it is not altogether disconnected therefrom.' "

A judge performing a judicial function is discharging an official duty.

 The statutes and rules referred to clearly indicate that the duty and responsibility of a sentencing judge does not end with the entry of judgment. He is an important factor in the scheme the legislature and the board have provided for the granting of clemency in these matters. It is common knowledge

that this is an area of increasing importance in society's treatment of criminal offenders. Sometimes the judge determines the matter of clemency himself and in other situations he furnishes information and recommendations to those who have that responsibility.

That these authorities have all the pertinent information a judge is able to furnish them and his recommendation as to matters concerning which he has acquired a measure of expertise, is definitely in the public interest. Runyon v. Board of Prison terms and Paroles, 26 Cal.App.2d 183, 79 P.2d 101. In our view the transmittal of the letter in controversy had a real relation to Judge Seacat's official duties in the prosecution involving the plaintiff's husband. It is therefore a privileged communication as to which he is clothed with absolute immunity.

In Hackworth v. Larson, 83 S.D. 674, 165 N.W.2d 705, we recently had occasion to consider the grant of privilege afforded by SDCL 1967 20-11-5 to our Secretary of State. We there said she enjoyed absolute privilege if the incident involved was "within the outer perimeter" of her line of duty. The activity involved was the issuance of a press release concerning the discharge of two officials in her office. We held it to be in the proper discharge of an official duty because it "had a real relation to the general matters committed by law to her control and supervision." Clearly the transmission of the letter here complained of was within the outer perimeter of Judge Seacat's official duties as a circuit judge.

To avoid this result plaintiff places much reliance on the fact the judge was not required by any specific statutory delineation to prepare and send the letter in question. This we think is not controlling. In fact, the same argument as to the press release involved was rejected in the Hackworth case because we felt it was in the public interest to disseminate information concerning public affairs. Likewise, in Garfield v. Palmieri, D.C., 193 F.Supp. 137, affirmed 2 Cir., 297 F.2d 526, a U.S. District Judge when sued for libel because of statements made in an opinion, was held to be performing a function of his office in

sending it to a requesting publisher, even though the furnishing of the opinion to the publisher, apparently, was not statutorily or otherwise required of him, and was sent several months after it had been handed down.

Affirmed.

All the Judges concur.