JANKLOW, Appellant v. KELLER et al., Respondents

CHRISTIANSEN, Appellant v. KELLER et al., Respondents

(241 N.W.2d 364)

(File Nos. 11588, 11589. Opinion filed April 23, 1976)

**Charles Rick Johnson** of **Johnson, Johnson & Eklund,** for plaintiffs and appellants.

**D. R. Herman** of **Herman & Wernke,** Gregory, for defendant and respondent, John Keller.

**Sidney B. Strange** of **Strange & Lyons**, Sioux Falls, **Dennis Roberts**, Oakland, Cal., **Mary K. O'Melveny** of **Cohn, Glickstein, Lurie, Ostrin & Lubell**, New York City, for defendants and respondents, Mark Lane and William Kunstler.

HALL, Circuit Judge.

The captioned cases, which arise from the same facts and present the same legal questions, were argued together and will be dealt with together in this opinion.

Plaintiff-appellants brought these actions seeking damages from the defendants for deceit and defamation. The trial court dismissed each action for failure to state a claim upon which relief could be granted. Basically, the dismissals were on the grounds that the statements complained of were privileged under SDCL 20-11-5(2) because they were made in a judicial proceeding by counsel, and the statements had some relation to the judicial proceeding. Plaintiffs have appealed from the orders of dismissal. We affirm.

David Hill was a defendant in a state court prosecution charging him and others with riot, arson and similar offenses arising out of American Indian demonstrations at Custer, South Dakota, on February 6, 1973. He was represented by attorneys Keller, Lane and Kunstler. The plaintiff, William Janklow, was a special prosecutor handling the criminal action for the State of South Dakota; the plaintiff, Bernard Christiansen, was an agent of the Division of Criminal Investigation for the State of South Dakota and one of the principal witnesses for the state in the prosecution of the criminal actions. The cases against Hill and other defendants had been the subject of widespread publicity.

On December 10, 1973, Hill, through his attorneys, filed a petition with the United States District Court for the District of South Dakota for removal of the state court criminal action to the federal court. 28 U.S.C. 1443(1) allows removal of a state criminal action to federal court upon a showing that the case is "(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil

rights of citizens of the United States, or of all persons within the jurisdiction thereof." The petition was signed by the three defendants, John Keller, Mark Lane and William Kunstler, as attorneys for Hill.

A part of the petition for removal was as follows:

"11 Both before and after September 30, 1973, said John Fitzgerald, who had indicated that he wished to assist the Custer defendants, met with Mark Lane and John Keller, defendant's attorneys and other attorneys associated with the defense * * * as well as with the legal workers thereto. Furthermore, said John Fitzgerald used the facilities of his office to make xerox copies of the files maintained by defendant's lawyers. Moreover, trial strategy for the Custer cases was discussed by counsel and defendants in Mr. Fitzgerald's presence at meetings held in his office and in the Custer County Jail, among others.

"12. Accordingly, petitioner was shocked to learn in late November of 1973 that Mr. Fitzgerald said that he had been appointed chief trial counsel for the South Dakota Attorney General's Office. Petitioner was further informed that Mr. Fitzgerald had been under consideration for said position prior to many of the said consultations and conferences with defense counsel.

"13. During the early hours of December 1, 1973, John Keller observed Bernard Christiansen, the chief witness against petitioner and the alleged victim of the crimes with which he is charged, drinking and in an apparently inebriated condition, together with the said John Fitzgerald and respondent William Janklow, both of whom were in the same condition, and others associated with the Attorney General's office, including respondent Kermit Sande, in the bar located in the Alex Johnson Hotel, Rapid City, South Dakota.

"14. Prior thereto and on or about November 20, 1973, after he had agreed to join the Attorney General's staff, Mr. Fitzgerald informed Gail Sullivan, a legal worker associated with the defense, that respondent William Janklow had called him to discuss the Custer cases.

"15. This obvious invasion of the defense camp has deprived petitioner of rights guaranteed to him by the constitution and laws of the United States."

Prior to hearing on the petition the news media gave extensive publicity to the contents of Paragraph 13.

The State of South Dakota resisted the petitioner's motion for removal of the case to federal court and filed a motion to remand the action to the state courts. An evidentiary hearing was held in the United States District Court in December of 1973, and the Honorable Andrew W. Bogue, Judge of the United States District Court, denied the motion for removal and remanded Hill's case to the state courts for trial.

In his memorandum opinion, Judge Bogue commented as to the above-quoted statements in Hill's petition as follows:

"On the stand in this action, Mr. Keller admitted that when he signed the petition he had not read the petition, in direct violation of the dictates of Rule 11 of the Federal Rules of Civil Procedure. Furthermore, when questioned about the 'apparently inebriated' condition of the respondents, Mr. Keller said that his definition of 'apparently inebriated' was anyone who had one drink. Furthermore, he stated he assumed that anyone who was in a bar at any late hour must be drunk. This was so even though the bar in which the respondents were in, is also a restaurant. In fact, it is undisputed that Mr. Janklow does not drink at all. Furthermore, there is no question but that Mr. Christiansen had had nothing to drink at all. This Court must simply say that the testimony of John Keller is not believable and will be rejected in totality."

By separate complaints, each of the plaintiffs instituted suit against the defendants. Each complaint is in two counts. Count I is based on the theory of deceit under SDCL 16-18-19, 16-18-26(1) and 16-19-3, alleging that the statements in the petition, and particularly Paragraph 13 thereof, were unlawful, intentional, wrongful and malicious; that the defendants knew, or should have known, that the statements relative to each plaintiff were false and irrelevant; that the statements were made to injure the plaintiff and to falsely mislead the United States District Court and the state courts of South Dakota. Each plaintiff in Count I alleged damages, including mental anguish, damage to credibility and profession, and asked for one million dollars actual damages trebled, and exemplary damages of one million dollars.

Count II of each complaint is based on defamation and libel. Count II in each complaint realleged the matters set forth in Count I, and alleged that the publication in the petition for removal was not privileged because it was knowingly false, made maliciously with an intent to disgrace and injure the plaintiff, was totally immaterial and irrelevant to any judicial purpose, and brought about unnecessary publicity of irrelevant matters. Each plaintiff, by his cause of action set forth in Count II of his complaint, seeks judgment against the defendants for actual damages in the amount of one million dollars, and one million dollars exemplary damages.

The defendants moved to dismiss each of the actions on the ground, among others, that the complaints failed to state a cause of action upon which relief could be granted. Judge James R. Bandy granted the motions to dismiss in each case. It is from the orders of dismissal that these appeals have been taken.

The trial court in dismissing each action accepted defendants' contention that the statements in Paragraph 13 of the petition for removal were privileged communication within the definition of SDCL 20-11-5(2), and the defendants were thereby granted absolute immunity.

Plaintiffs take a position that under the circumstances here shown the offending statements were not privileged under SDCL

20-11-5(2) to justify the dismissals under absolute immunity. The pertinent part of SDCL 20-11-5 provides as follows:

"A privileged communication is one made:

(1)  In the proper discharge of an official duty;

(2)  In any legislative or judicial proceeding, or in any other official proceeding authorized by law * * *."

Restatement, Torts, at page 229 states:

"§ 586. ATTORNEYS AT LAW.

*"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.*

*Comment:*

"*a.* The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth or even his knowledge of its falsity. These matters are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer. The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary thereto. The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in mo-

tion. The conduct of the litigation includes the examination and cross-examination of witnesses, comments upon the evidence and arguments both oral and written upon the evidence, whether made to court or jury.

\* \* \* \* \* \*

"c. *Relation of statement to proceedings.* The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the pending litigation, although it need not be strictly pertinent or relevant to any issue involved therein. Thus, the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege. So too, the publication of defamatory matter in a question to a witness may be within the privilege although the question is withdrawn or the witness is directed by the judge not to answer it. On the other hand, the privilege does not cover the attorney's publication of defamatory matter which has no connection whatever with the litigation.

"d. Judicial proceedings include all proceedings before an officer or other tribunal exercising a judicial function, as to which see § 585, Comments *c* and *f.*"

Because the above-quoted portion of SDCL 20-11-5 is identical to a portion of § 47 of California's Civil Code counsel have covered extensively the California cases in their briefs and arguments. See Thornton v. Rhoden, 1966, 245 Cal.App.2d 80, 53 Cal.Rptr. 706; Smith v. Hatch, 1969, 271 Cal.App.2d 39, 76 Cal.Rptr. 350; Bradley v. Hartford Accident & Indemnity Co., 1973, 30 Cal.App.3d 818, 106 Cal.Rptr. 718; Frisk v. Merrihew, 1974, 42 Cal.App.3d 319, 116 Cal.Rptr. 781, and cases cited in those decisions in which the California courts have dealt in length with the absolute privilege granted under the language of SDCL 20-11-5(2), and the subject of § 586, Restatement, Torts.

■ The application of the absolute privilege granted by SDCL 20-11-5(2) can best be understood by considering the pur-

pose for which the privilege was established. As indicated in the comment under § 586, Restatement, Torts, above, the purpose is to secure justice by affording attorneys the freedom to represent their clients without the fear of harassment through defamation suits. " ' * * * [I]t is not intended to protect malicious and untruthful persons, but * * * to protect persons * * * who under a different rule would be liable, not perhaps to verdicts and judgments against them, but to the vexation of defending actions.'" Friedman v. Knecht, 1967, 248 Cal.App.2d 455, 56 Cal.Rptr. 540.

> "*The* obvious *purpose* * * * *is to afford litigants freedom of access to the courts* to secure and defend their rights without fear of being harassed by actions for defamation (citations) *and to promote the unfettered administration of justice* even though as an incidental result it may in some instances provide an immunity to the evil-disposed and malignant slanderer (citations)." Bradley v. Hartford Accident & Indemnity Co., 30 Cal.App.3d 818, 106 Cal.Rptr. 718, 721.

SDCL 20-11-5(1) and (2) have been considered by this court in the case of Hackworth v. Larson, 1969, 83 S.D. 674, 165 N.W.2d 705, and Brech v. Seacat, 1969, 84 S.D. 264, 170 N.W.2d 348. Hackworth v. Larson involved a claim for defamation arising from a press release issued by Miss Larson, as Secretary of State, concerning the discharge of two employees. The trial court granted summary judgment to the defendant and this court affirmed, holding that in issuing the press release in question defendant Larson enjoyed the absolute privilege offered by the statute, even if the press release contained false and inaccurate statements, and that "discovery concerning the truth of the release or her purpose and state of mind in issuing it would be meaningless." Brech v. Seacat, supra, involved a claim for damages for statements made by a sentencing judge in a letter to the State Board of Pardons and Paroles, and to the Warden of the State Penitentiary, concerning the circumstances surrounding the commission of the crime to which plaintiff's husband had pleaded guilty, and concerning the criminal defendant's habits, disposition and reputation. The plaintiff's complaint alleges that

the statements were false and maliciously made. In holding that the defamation action was properly dismissed for failure to state a claim upon which relief could be granted, this court, quoting with approval from Restatement, Torts, § 585, as to judicial officers, held that statements made by the judge were absolutely privileged under SDCL 20-11-5.

■ In granting summary judgment in Hackworth and dismissal for failure to state a claim upon which relief could be granted in Brech, the trial courts held that the defendant in each case was entitled to the protection of the absolute privilege as a matter of law, and no issue was presented for submission to the jury. In granting summary judgment or such dismissals, a court must view the pleadings and evidence in the light most favorable to the nonmoving party. Wilson v. Great Northern Railway Company, 1968, 83 S.D. 207, 157 N.W.2d 19; 71 C.J.S. Pleading § 426.

■ Thus, in determining whether the trial court was justified in taking Janklow's and Christiansen's cases from the jury by granting the motions for dismissal, all of the material allegations in each complaint must be regarded as true.

The California court in Bradley v. Hartford, supra, held:

"that absolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." 106 Cal.Rptr. at 722.

The California court in Bradley further commenting on the need to avoid abuse of privileged defamation stated:

"compels the conclusion that in determining whether or not the defamatory publication should be accorded an absolute privilege, *special emphasis must be laid on the requirement that it be made in furtherance of the litigation and to promote the interest of justice.*" 106 Cal.Rptr. at 723.

■ The tests laid down in Bradley, applied to the Janklow and Christiansen complaints, show that the statements in Paragraph 13 of the petition for removal come within the absolute privilege. (1) The petition for removal was clearly filed in a judicial proceeding as a pleading in the United States District Court for the District of South Dakota; (2) Although the relief sought by the petitioner Hill was not granted by the United States District Court, the statements contained in the petition had some connection and logical relation to the action; (3) The statements were made to achieve the objects of the litigation as explained by Judge Bandy in his memorandum opinion. The petitioner was seeking removal of his case to the federal courts and one of his principal contentions was that his civil rights could not be protected in the state courts. One of the reasons which Hill advanced in support of his petition for removal was that Fitzgerald, as a public defender, had conferred with the attorneys for the Custer defendants, indicating that he wished to assist the Custer defendants. He further contended that Fitzgerald and the attorneys for the Custer defendants discussed the strategy of the defense, and that Fitzgerald not only participated in conferences but made photocopies of the files maintained by the lawyers for the Custer defendants. The petition further shows that Fitzgerald thereafter was appointed as chief trial counsel for the South Dakota Attorney General's office, and thereafter Fitzgerald had informed a legal worker associated with the defense that William Janklow had called him to discuss the Custer cases. It is with this background that the statements contained in Paragraph 13 as to the alleged meeting in the early hours of December 1, 1973, became important. Statements in Paragraph 13 that John Fitzgerald, Christiansen and others were in the bar "drinking and in an apparently inebriated condition" had a connection and logical relation to the action, and were to achieve the object of the litigation by endeavoring to show the close association of the persons alleged to have been present at the time and place. The allegations as to drinking were intended to negative the idea of an accidental or casual meeting, or a momentary encounter, and could also be intended to show that Fitzgerald meeting with others interested in the prosecution of the case against Hill might be more likely to reveal the strategy and secrets of the defense than at a sober meeting; and (4) Finally,

there is no question that the statements involved litigants or other participants allowed by law, since the statements were made by Keller, Lane and Kunstler, and the record is undisputed that they were each acting as legal counsel for Hill in signing and filing Hill's petition for removal. Judge Bandy, in his memorandum opinion, explained the logical relation of the offending statement to Hill's action and explained that the statements were made to achieve the objectives of the litigation. His memorandum further meets the standard of special emphasis on the requirement that the statement be made in furtherance of the litigation and to promote the interests of justice.

Since the complaints on their face show that the defendants, and each of them, were as a matter of law entitled to the absolute immunity afforded to an attorney in a judicial proceeding under our statute, we affirm Judge Bandy's action in dismissing the defamation actions.

Each complaint had a separate action for deceit, alleging that the petition and statements made by the defendants were in violation of SDCL 16-18-19, and that they were made with intent to injure the plaintiff and falsely mislead the courts, and that the petition and statements violated SDCL 16-18-26(1) and 16-19-3.

The statutes relied on are as follows:

*16-18-19. Attorney's duty to use truthful means.* — It is the duty of an attorney and counselor at law to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statement of fact or law."

*16-18-26. Misconduct by attorney as misdemeanor.* — Every attorney at law who:

(1) Practices any deceit or collusion, or consents to the same with intent to deceive the court or any party;

\*    .\*    \*    \*    \*    \*

shall be guilty of a misdemeanor."

"*16-19-3. Deceit and collusion as grounds for disbarment — Treble damages.* — An attorney and counselor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge, or party to an action or proceeding, is liable to be disbarred, and shall forfeit to the injured party treble damages to be recovered in a civil action."

The case of Thornton v. Rhoden, supra, involved actions for defamation and for abuse of process. In that case, the court dismissed the defamation action on the basis of absolute privilege, and commenting on the second action, stated:

"The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint. If it is desirable to create an absolute privilege in defamation, not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with libel or slander actions while acting for his client, we should not remove one concern and saddle him with another for doing precisely the same thing." 53 Cal.Rptr. at 719.

Each of the statutes relied upon by the plaintiffs in their actions for deceit carries a penalty other than action for damages, and is therefore enforceable. The deceit count in each complaint simply seeks to recover damages on the same facts and for basically the same reasons and the same injury as set forth in the defamation count. We hold that the absolute privilege as a defense to the defamation count also requires dismissal of the count for deceit. The dismissal of the count for deceit in each complaint on the ground that it failed to state a cause of action is therefore affirmed.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

HALL, Circuit Judge, sitting for COLER, J., disqualified.