S.W. CROES FAMILY TRUST Successor in Interest to S.W. Croes, a/k/a Shirley Croes, a/k/a Shirley W. Croes, Plaintiffs,

v.

SMALL BUSINESS ADMINISTRATION, Bank of Belle Fourche, Spearfish Branch and Norwest Bank South Dakota, Defendants.

Roger K. ALLAN and Nance Allan, Defendants/Appellants,

v.

Carl J. SHEESLEY, Gregory C. Sheesley and Hans J. Pfeiffer, Defendants/Appellees.

No. 16146.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1989.

Reassigned May 18, 1989.

Decided Sept. 20, 1989.

A.P. Fuller of Fuller & Co., Lead (Brad P. Gordon of Fuller & Co. Lead, on the brief), for defendants-appellants.

Thomas C. Brady of Richards, Hood & Brady, Spearfish, for defendants-appellees.

MILLER, Justice (on reassignment).

This appeal concerns procedural issues arising in an action commenced upon the default in a contract for the sale of a motel. In affirming the trial court we hold that it did not commit reversible error in (1) dismissing appellants' cross-claim grounded in fraud and deceit, (2) denying appellants' motion to amend their cross-claim, and (3) granting summary judgment in favor of appellees on their cross-claim.

## FACTS AND PROCEDURAL HISTORY

In December 1982, S.W. Croes sold the Luxury Lodge motel in Spearfish, South Dakota, to Carl J. and Gregory C. Sheesley and Hans Pfeiffer (appellees) on a "Contract For Deed and Security Agreement." In September 1984, before appellees completed payment under the contract, they sold the property to Roger K. and Nance Allan (appellants) under a similar contract for deed and security agreement. It was agreed between the parties that appellants would assume and pay the balance due and owing under the Croes/Sheesley/Pfeiffer contract. Croes had previously consented to the conveyance and transfer but did not release appellees from liability in the event of default by appellants.

Appellants defaulted by failing to make payments for November and December 1986. In 1987, payments were made for January, February and March but nothing was paid thereafter. As a result, Croes commenced an action against appellees, appellants, the Small Business Administration (SBA) and Norwest Bank. (SBA and Norwest Bank were made parties to the original action primarily for the purpose of determining the priority of their security interests.) What ensued thereafter was the filing of a series of counterclaims, cross-claims and motions by all parties.[1] In addition thereto, several motions to amend pleadings were made by appellants.

In September 1987, Croes filed a motion for summary judgment against appellees and appellants. At approximately the same time, appellees filed a motion for summary judgment against appellants. On the date set for hearing (October 7, 1987) the court granted Croes' motion for summary judgment and took appellees' motion under advisement. At the same time, the court granted appellants' motion for leave to amend and to conduct further discovery.

On November 2, 1987, appellants filed amended pleadings. After receiving appellants' amended pleadings, appellees filed motions to compel appellants to set forth their claims in separate counts, for more definite statement, to compel appellants to elect remedies and four motions for summary judgment. All of these motions were granted with the exception of those for summary judgment, which were taken under advisement. Appellants were given until November 17, 1987, to respond, which date was later extended, at their request, to November 24, 1987. Appellants' sole response to the trial court's prior orders was a document entitled "Cross Petitioners Allans' Answer to Defendants Sheesley and Pfeiffer Motion for Summary Judgment." There was no specific pleading which set forth their claims in separate counts or electing remedies, nor did they file *any* amendments to their pleadings. On December 1, 1987, a telephonic hearing was held. Appellees moved for dismissal of appellants' amended cross-claim (which had been improperly styled as a counterclaim) on the grounds that appellants'

---

**1.** In most instances, appellants were represented before the trial court by counsel from Oklahoma.

pleadings failed to state a cause of action upon which relief could be granted. Although appellants had previously elected to proceed in fraud, they made no amendment of their prior pleading which was grounded in both rescission and fraud and which prayed for damages relating to rescission. Because of appellants' prior election to proceed on a fraud claim, the trial court struck the allegations in the pleadings relevant to rescission. Thus, at that point, there were insufficient allegations on the grounds of fraud and no prayer for damages. In fact, in the colloquy between court and counsel, appellants' counsel could not articulate with reasonable clarity what their damage claim was. The court then dismissed the pleading for the reason that no damages, a necessary element in order to sustain a cause of action in fraud, had been alleged. Appellees were also granted summary judgment on their cross-claim.[2]

## DECISION

### I

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISMISSING APPELLANTS' PLEADING FOR FRAUD AND DECEIT.

As stated earlier, appellees made a motion to dismiss the second amended "counterclaim" of appellants for the reason that it failed to state a cause of action. This motion was granted.

■ Pursuant to SDCL 15–6–41(b) and (c), the court has power to grant a motion to dismiss a pleading when the pleader has failed to comply with the rules of civil procedure (SDCL ch. 15–6), or failed to comply with any order of the circuit court. Under our statute, the power to dismiss is discretionary. *Duncan v. Pennington County Hous. Auth.*, 382 N.W.2d 425 (S.D. 1986). In reviewing the grant or denial of such a motion, this court's inquiry is whether the circuit court abused its discre-

tion. *Duncan, supra.* Where an abuse of discretion is not shown reversible error will not lie. *See Shamburger v. Behrens,* 418 N.W.2d 299 (S.D.1988).

Appellants failed to specifically comply with the trial court's order requiring them to set forth their claims in separate counts. Although they did make a more definite statement and elect a remedy, it was done via a response to appellees' summary judgment motion, in which response, among other things, they improperly asserted damages in the amount of $348,900. Exhibit E attached to the response merely indicated possible damages of $48,900. After being informed by the trial court of this error, they still could not clearly articulate their damage claim (nor have they on appeal clarified what their alleged damages are). Appellants have suggested that their response to the summary judgment sufficed to sufficiently set forth their damage claim. However, a response to a motion for summary judgment is not a pleading. It is merely a response to a motion. Not even a motion for summary judgment is a pleading. *See* SDCL 15–6–7(a) and (b).

■ Under *Holy Cross Parish v. Huether,* 308 N.W.2d 575, 576 (S.D.1981), "a pleading based on fraud as a basis of recovery of damages must allege all the essential elements of actionable fraud to be sufficient." Essential elements of actionable fraud, as set forth in *Holy Cross Parish,* are that a representation was made as a statement of fact, which was untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; that he did in fact rely on it and was induced thereby to act to his *injury or damage.* South Dakota law requires that damages be pleaded with reasonable certainty. *Wang v. Bekken,* 310 N.W.2d 166, 167 (S.D.1981).

■ The court did not abuse its discretion in dismissing appellants' pleading.

---

**2.** The specific judgment from which this appeal is taken states that appellants, by electing to limit their multi-faceted pleading (cross-claim improperly styled as counterclaim) to an action for fraud and deceit, consented to dismissal of the rescission action, thereby ratifying the contract. Nothing in appellants' brief to this court directly challenges that ruling; therefore it is res judicata.

The pleading failed to state a cause of action in that it did not plead or allege damages with reasonable certainty. Further, such failure was a violation of the trial court's specific order. *Ministrelli Constr. Co. v. Monroe County Road*, 153 Mich.App. 144, 395 N.W.2d 38 (1986); *Banaszewski v. Colman*, 131 Mich.App. 92, 345 N.W.2d 647 (1983); *Holy Cross, supra.*

## II

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANTS' MOTION TO AMEND THEIR PLEADING AGAINST APPELLEES.

The record reflects that the trial court, on several occasions throughout the course of this action, granted appellants' motions to amend various pleadings, including their claims against appellees. During the telephonic hearing, after the trial court granted appellees' motion to dismiss (*see* Issue 1), appellants orally moved the court to set aside its order and allow them to again amend their pleadings. That motion was denied.[3]

SDCL 15–6–15(a) states, in pertinent part: "[A] party may amend its pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." On appeal, this court will not disturb the trial court's decision to permit or deny amendment of pleadings unless there has been a clear abuse of discretion which results in prejudice to the nonmoving party. *Tesch v. Tesch*, 399 N.W.2d 880 (S.D.1987); *Zahrowski v. Dahl*, 78 S.D. 255, 100 N.W.2d 802 (1960).

It was apparent to the trial court that appellants' pleadings were not and may never be in compliance with South Dakota law or the court's orders. Appellants' pleadings and responses were simply becoming less enlightening and more confusing. The trial court was becoming understandably frustrated.

■ Nothing in the record indicates that appellants could clear up the confusion they created even if they were allowed to amend their pleadings one more time. There must be some reasonable finality in allowing a party to amend, to enable the court and opposing counsel to make adequate preparation for trial. We hasten to note that appellants did not desire to amend in some minor respect to conform to the proof, but, rather, sought a major amendment, which went to the heart or grounds of the litigation. There has been no showing that the trial court abused its discretion by denying appellants' motion to amend, especially where previous motions had been granted without compliance with court orders or any improvement to the pleadings. *Tesch, supra.*

## III

WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON THEIR CROSS–CLAIM AGAINST APPELLANTS.

■ Summary judgment is proper if it can be shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c); *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

From our review of the record, and considering the state of the pleadings, motions and responses, we are convinced that the trial court properly granted summary judgment. *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120 (S.D.1977).

Affirmed.

MORGAN, J., and BRADSHAW, Circuit Judge, concur.

---

**3.** It is clear after a review of the record that appellants' out-of-state counsel either failed to understand and appreciate our rules of civil procedure or chose to ignore them. This is evidenced by, among other things, inadequate pleadings and responses to motions, failure to comply with court orders, late filings, the imposition of sanctions against him by the court, and counterclaiming when there should be a cross-claim.

HENDERSON, J., and BERNDT, Circuit Judge, dissent.

BERNDT, Circuit Judge, sitting for WUEST, C.J., disqualified.

BRADSHAW, Circuit Judge, sitting for SABERS, J., disqualified.

HENDERSON, Justice (dissenting).

In joining the dissent of Judge Berndt, I wish to express that it was a circuit court judge's responsibility to review the circuit court file. Peeved he might have been with out-of-state counsel, yet he owed a duty to ferret out the substantive pleading. Authorities in Judge Berndt's dissent clearly substantiate that our decision today is wrong in that it vaults technical considerations, in the construction of pleadings, over the liberal rules of construction favored by civil code pleading.

We must, in my opinion, review pleadings so that they admit of the spirit and reason of the law. Liberal construction of pleadings tends to eradicate the evil which they are incipiently designed to remedy.

Common law pleading was a system of technical rules and principles whereby technical propriety had to be observed to produce a justiciable issue. These technical rules are obsolete under the modern Rules of Civil Procedure. "The object of pleading is not to destroy but to advance the ends of justice." 71 C.J.S. *Pleading* § 1, at 18 (1951). Accord: *Katin et al. v. Crispel*, 22 N.J.Misc. 394, 395–397, 39 A.2d 183, 184 (N.J.Cir.1944).

Technical writs were the "open sesame" to justice under the common law. A pleader who failed to allege the facts to fit within a writ was immediately bounced out of court. This precipitated a great deal of injustice, spawning the chancery courts and ultimately a new system of pleading.

In 1966, this Court reaffirmed its historic stance on construction of pleadings in *Burmeister v. Youngstrom*, 81 S.D. 578, 585, 139 N.W.2d 226, 228 (1966) by expressing:

By statutory mandate, SDC 1960 Supp. 33.0915, [now, SDCL 15–6–8(f)] we are required to construe a pleading liberally for the purpose of determining its effect with a view of doing substantial justice between the parties. See *Baker v. Jewell*, 77 S.D. 573, 96 N.W.2d 299 [1959]. Courts do not favor objection to pleadings in the manner attempted in this case and to justify the objection interposed, it must appear that the defect relied upon is such that it could not be cured by an amendment to conform to the proof. *Knapp v. Brett*, 54 S.D. 1, 222 N.W. 297 [1929]. (note added).

The original source of SDCL 15–6–8(f) in South Dakota is CCivP 1887, § 128.

Recent South Dakota authority supports the viewpoint of liberal grants by a trial court to "freely" amend. In *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D.1987), this Court unanimously held:

The cases are legion. A trial court may permit the amendment of pleadings before, during, and after trial without the adverse party's consent. *Koenekamp v. Picasso*, 63 S.D. 440, 443, 260 N.W. 623, 624 (1935); *Murphy v. Plankinton Bank*, 18 S.D. 317, 318, 100 N.W. 614, 616 (1904). See 61A Am.Jur.2d Pleading §§ 311, 315 (1981); 71 C.J.S. Pleading § 28 (1951). SDCL 15–6–15(a) states that "leave [to amend] shall be freely given when justice so requires." The trial court's decision will not be disturbed on appeal absent a clear abuse of discretion which results in prejudice to the non-moving party. *Behringer v. Muchow*, 72 S.D. 80, 83, 30 N.W.2d 5, 6 (1947). See also *Edwards v. Chicago, M. & St. P. Ry. Co.*, 21 S.D. 504, 510, 110 N.W. 832, 834 (1907). Prejudice is often shown when a party is surprised and unprepared to meet the contents of the proposed amendment. See *Edwards*, 110 N.W. at 834; 61A Am.Jur.2d Pleading § 315.

There would have been no surprise here. An abuse of discretion took place.

Desiring to keep South Dakota in the main stream of construing pleadings to do substantial justice, I am compelled to dissent and accordingly join the dissent of Judge Berndt believing that it represents the general principle that pleadings must, of necessity, be construed in a light most

favorable to the pleader and non-moving party or we shall step backward into common law, technical writ pleading. *Janklow v. Keller*, 90 S.D. 322, 331, 241 N.W.2d 364, 368 (1976). See, also, *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968).

## PLEADING IN THOSE DAYS OF YORE

De quarantina habenda. At common law, a writ which a widow entitled to quarantine might sue out in case the heir or other persons ejected her. It seems to have been a summary process, and required the sheriff, if no just cause were shown against it, speedily to put her into possession. Black's Law Dictionary 398 (5th ed.1979).

De rationabili parte bonorum. A writ which lay for the widow (and children) of a deceased person against his executors, to recover a third part of the deceased's personalty, after payment of his debts, or to recover their reasonable part or share of his goods. 2 Bl.Comm. 492. Black's, at 398.

De rescussu. Writ of rescue or rescous. A writ which lay where cattle distrained, or persons arrested, were rescued from those taking them. Black's, at 399.

De uxore rapta et abducta. Old English writ which lay where a man's wife had been ravished and carried away. A species of writ of trespass. 3 Bl.Comm. 139. Black's, at 406.

Reflection on these old English writs, a few examples above, dictates a conclusion that they were onerous, rigid, and quite often subverted, rather than served, justice. Time begot their demise.

The Federal Rules of Civil Procedures were enacted in 1938. Beginning in 1939, the South Dakota Rules of Civil Procedure tracked these Federal Rules. *Read, Some Reflections On The Golden Anniversary of The Federal Rules of Civil Procedure*, 33 S.D.L.Rev. 195 (1988) by Professor David S. Day. Onward, pleading soldiers....

BERNDT, Circuit Judge (dissenting).

I respectfully dissent regarding the majority's disposition of Issue I. The trial court's dismissal of Allans' cross-claim for failure to state a claim upon which relief could be granted was based on too restrictive a view of Allans' pleadings.

SDCL 15–6–8(f) provides: "All pleadings shall be so construed as to do substantial justice." In interpreting Federal Rule of Civil Procedure 8(f), which is phrased identically, the United States Supreme Court observed that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 86 (1957). This Court adopted the *Conley* position, verbatim, in *Miller v. Scholten*, 273 N.W.2d 757, 760 (S.D.1979). "The rules of procedure favor resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations." *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 226 (S.D. 1988). Under these authorities, the trial court clearly abused its discretion.

Although the majority concedes that Allans "did make a more definite statement and elect a remedy", it errs in deeming the document containing them to be a "response to a motion for summary judgment." (Conference op. at p. 4). This document was prepared in response to the trial court's orders dated November 17, 1987, directing Allans, among other things, to make an election between an action for deceit or rescission, and set forth their claims in separate counts. These are matters better considered as amendments to Allans' pleadings, rather than mere response to a motion for summary judgment. In Friedenthal, Kane and Miller, *Civil Procedure*, § 512, at p. 267 (1985), it is noted that the modern trend in pleading is not to require a party to make a binding election of remedies in his initial pleading. Instead, such party may amend his complaint unless and until some real prejudice is shown.

*Friedenthal,* at 267. This is exactly what Allans were doing in this case.

It has long been settled law in this state that the title of a pleading and its technical form may not be elevated over the substance of a pleading. *Van Brunt and Davis Co. v. Harrigan,* 8 S.D. 96, 65 N.W. 421 (1895); *Green v. Hughitt School Tp.,* 5 S.D. 452, 59 N.W. 224 (1894). Both the trial court and the majority fail to integrate Allans' first amended pleading with the subsequent, court-ordered amendment and attachments thereto. The trial court stated "Well, I look at your Amended Counterclaim, which is actually a cross-claim, as being your pleading, period, within that document." Allans' attorney pointed out that the damages were specifically set out in his selection of remedies. The trial court replied "Well, I am not going to rifle through the file to try to find documents setting forth and try to piece together the claim for damages...." Allans' attorney attempted to point out to the trial court precisely where the damages were set out: "Well, it sets forth an amount. But in my election deal, Your Honor, I set up the amounts of damages that we would be seeking as a consequential damage as a result of the fraud committed and those documents were provided a month ago...." "Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears." *Fundin v. Chicago Pneumatic Tool Co.,* 199 Cal.Rptr. 789, 152 Cal.App.3d 951 (1984).

In granting motions for dismissal for failure to state a claim upon which relief can be granted, SDCL 15–6–12(b)(5), "a court must view the pleadings and evidence in the light most favorable to the nonmoving party." *Janklow v. Keller,* 90 S.D. 322, 331, 241 N.W.2d 364, 368 (1976). Such was not done here.

The essential elements of actionable fraud are set forth in *Northwest Realty Company v. Colling,* 82 S.D. 421, 433, 147 N.W.2d 675, 683 (1966) and *Holy Cross Parish v. Huether,* 308 N.W.2d 575, 576 (S.D.1981):

> [T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

The election of remedies pleads on action in fraud. The election indicates that Sheesley and Pfeiffer, by and through their agents, led Allans to believe that the motel was a member in good standing of the Best Western franchise system.* This representation was made while it was known to be untrue. The pleading indicates that the representation was made with the intent to induce Allans to purchase the motel. Finally, the pleading indicates that in reliance upon that representation, Allans purchased the motel and were damaged to the extent of $348,900, consisting of $48,900 in repairs needed to bring the motel up to Best Western standards, and $300,000 of lost revenue due to loss of Best Western business. The Allans adequately pleaded a cause of action in fraud against Sheesley and Pfeiffer. Therefore, it was reversible error for the trial court to dismiss for failure to state a claim upon which relief could be granted.

Sheesley and Pfeiffer argue that Allans' motion could have properly been dismissed for failure to comply with an order of the court pursuant to SDCL 15–6–41(b). That order directed Allans to elect a remedy, set forth their claims in separate counts and clarify whether they were seeking relief in rescission or deceit. Allans' final pleading complies with the court order. In the first paragraph of that pleading, Allans, pursuant to SDCL 15–6–10(c), incorporated all their prior pleadings. In the second paragraph, Allans elect "fraudulent deceit" as their remedy and drop the rescission action. The pleading seeks only one claim against Sheesley and Pfeiffer and does so with sufficient particularity, so there was no need for separate counts. Read as a

---

* Best Western extends franchises only to motels which meet high standards.

whole, in the context of this case, *Fundin, supra,* Allans' pleading complied with the trial court's orders.

Allans' cross-claim, if not dismissed, obviously presented genuine questions of fact. Any summary judgment regarding their cross-claim was, on this record, erroneous. *See, French v. Dell Rapids Community Hosp.,* 432 N.W.2d 285, 288 (S.D.1988).

In summary, no adequate grounds for dismissal of Allans' cross-claim existed. As the trial court should be reversed on that basis, analysis of Allans' remaining arguments is unnecessary. The purpose behind the substitution of modern pleading for the old "bushwhack" type of law pleading was to facilitate decision of cases on their substantive merits, rather than have cases turn on lawyers' tactical and technical skill. *Friedenthal, supra,* § 5.1, p. 237–8; 1 *Bancroft's Code Pleading,* § 6, p. 17–18 (1926). The majority opinion defeats that purpose, exalting form over substance.

I am authorized to state that Justice HENDERSON joins in this dissent.