HACKWORTH et al., Appellants v. LARSON et al., Respondents

(165 N.W.2d 705)

(File No. 10498. Opinion filed March 5, 1969)

**Gunderson, Farrar, Aldrich & Warder,** Rapid City, for plaintiffs and appellants.

**Whiting, Lynn, Jackson, Freiberg & Shultz,** Rapid City, for defendant and respondent, Alma H. Larson.

**Bangs, McCullen, Butler & Foye,** Rapid City, for defendants and respondents, The Associated Press and the Rapid City Journal Co.

RENTTO, Judge.

This is a libel action predicated on a news release issued by the defendant, Alma H. Larson, Secretary of State of South Dakota, and a news dispatch concerning it prepared and disseminated by the Associated Press and published by the Rapid City Journal Company. The defendants moved for summary judgment on the pleadings. When the motions were heard these were supplemented by affidavits filed on behalf of all parties.

The motions were granted. From the judgment entered plaintiffs appeal. As to defendant Larson, the question presented is whether the occasion is absolutely privileged and as to the other defendants whether the First Amendment to the U. S. Constitution, as made applicable to the states by the Fourteenth, precludes recovery against them.

For some time prior to the issuance of the news release plaintiffs were employed in defendant Larson's office, Ann Hackworth as Assistant Secretary of State and Beverly Burton as Corporation Secretary. They questioned the manner in which defendant Larson conducted the office and were critical of the official conduct of an employee therein. These matters they discussed with her and when she didn't accept their suggestions with the Governor, and at his request with the Attorney General. Plaintiff Hackworth seemed to be the leader in these activities, but plaintiff Burton participated in some of them. By letters dated December 30, 1966, they notified defendant Larson that they would take their annual leaves commencing January 3, 1967 and that their resignations would become effective upon expiration of such periods.

The Attorney General on orders from the Governor began an investigation of the situation. This resulted in the following dispatch from the AP published in the Journal on January 5, 1967:

"PIERRE RESIGNATIONS TOUCH OFF PROBE PIERRE (AP)—An inquiry by the Attorney General's office is reportedly being made after two persons employed in the Secretary of State's office submitted resignations.

There were no indications of why the investigation was being made.

Ann Hackworth, Assistant Secretary of State, and Mrs. Beverly Burton, Corporation Secretary, resigned.

Secretary of State, Alma Larson, said she had no comment.

Miss Hackworth also said she could not 'make a statement at this time.'

There was a report that a third resignation had been made in the Secretary of State office.

At Sioux Falls, Attorney General Frank Farrar said the investigation was ordered by Governor Nils Boe but did not elaborate."

The claims of the plaintiffs do not involve this dispatch, but is proper background for what follows.

On January 6, defendant Larson issued the following press release:

"January 6, 1967 at 11:00 A. M.

Secretary of State Alma Larson today accepted the resignation of Miss Donna Hagemann, a secretary in her office. Miss Larson says she 'regrets very much' this resignation, but understands Miss Hagemann's desire to change employment. The Secretary of State said Miss Hagemann has been 'a very good secretary and a hard worker in the office for the past five years. Her work has always been outstanding.'

In her letter of resignation, Miss Hagemann wrote, 'I have enjoyed my employment in this office and feel that the experience will be of great benefit in my future work.'

At the same time, Miss Larson announced two terminations in her office and two new appointments. She said her assistant, Ann Hackworth, and another secretary, Mrs. Beverly Burton, had tendered resignations but that she rejected them. According to Miss Larson, the two women employees were 'fired for several reasons.' She listed 'insubordination and failure to work' as the primary causes for the firing.

Miss Larson said the two discharged women 'have not worked since December 30, but they expect to get paid anyway. I know that the people of South Dakota would not permit such laxity. As a consequence, I had no recourse but to remove their names from the payroll.'

The two new employees in the office of the Secretary of State are Mrs. Kay Enright from Presho and Mrs. Caroline Tschetter of Bridgewater. No announcement had been made regarding who will be named Assistant Secretary to replace Miss Hackworth.

In her statement to the Press, Miss Larson said the office shakeup was necessary to provide efficient and business-like service from her department."

It is upon this item that the plaintiffs base their claims of libel against defendant Larson.

On the same day the Attorney General held a press conference at which he disclosed that an investigation of the Secretary of State's office was underway, ordered by the Governor, and that it was a routine investigation. He disclosed no specific reason for it. Later that day the AP prepared the following news dispatch concerning defendant Larson's press release and the Attorney General's conference:

"Pierre (AP)—Secretary of State Alma Larson said today she has received the resignation of a third staff member.

However, Miss Larson said she rejected the two earlier resignations and fired the pair. Fired were Ann Hackworth, Assistant Secretary of State, and Mrs. Beverly Burton, a Corporation Department Secretary. The third resignation, effective today, came from Donna Hagemann, a Secretary. At the same time, an investigation by the Attorney General's office was continuing but there was no specific reason for the probe reported. Atty. Gen. Frank Farrar called the matter 'routine'.

The investigation was ordered by Gov. Nils Boe, Farrar said.

Miss Hackworth and Mrs. Burton said Thursday they had turned in their resignations. However, Miss Larson said she had rejected their resignations 'for several reasons,' listing 'insubordination and failure to work.'

Miss Larson said the two 'have not worked since Dec. 30, but they expect to get paid anyway. I know that the people of South Dakota would not permit such laxity. As a consequence, I have no recourse but to remove their names from the payroll.'

Miss Larson said two replacements have been employed. They are Mrs. Kay Enright, Presho, and Caroline Tschetter, Bridgewater.
No announcement has been made regarding who will be named assistant secretary to succeed Miss Hackworth.

The fuss in the Secretary of State's Office is the third hassle involving state government department heads within the last six months. Three unit heads in the Department of Public Welfare resigned and criticized Matthew Furze, Department Director.

The other controversy centered around State Auditor Lloyd Jorgenson, who was State Treasurer at the time. Democrats questioned him during the election campaign about his bank deposit practices."

The Journal published this item as it appeared adding thereto only the headline "Alma Fires Two Who Quit". On this dispatch and the article published by the Journal plaintiffs base their claims against the AP and the Journal.

About five months later this action was commenced. When defendants served their respective answers they also moved for summary judgment. These motions were heard at a time and place agreed upon by counsel. While they had not initiated

any prior efforts to take depositions or hold discovery proceedings, at the hearing on the motions plaintiffs urged that they should be denied or continued, to permit them to engage in discovery. The court having determined that no genuine issue of fact existed and that no proper purpose would be served by permitting plaintiffs to engage in discovery, directed the entry of judgment in favor of the defendants.

As to defendant Larson the plaintiffs take the position that she does not enjoy an absolute privilege because she was not required by law or otherwise to issue statements to the press.

█ This claim is without validity. It is now well established that the issuance of press releases is an essential activity of public officials if "within the outer perimeter" of their line of duty. Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, and Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, seem to be leading cases in this field. See also Sheridan v. Crisona, 14 N.Y.2d 108, 249 N.Y.S.2d 161, 198 N.E.2d 359; Lombardo v. Stoke, 18 N.Y.2d 394, 276 N.Y.S.2d 97, 222 N.E.2d 721; Gold Seal Chinchillas, Inc. v. State of Washington, 69 Wash.2d 828, 420 P.2d 698; Sciandra v. Lynett, 409 Pa. 595, 187 A.2d 586. The theory behind this view is that it is in the public interest that information be made available as to what takes place in public affairs. The public is entitled to more than rumors. It is thought desirable to encourage free and uninhibited dissemination of information about governmental activities even if on occasions an individual suffers harm thereby.

█ Defendant Larson was a constitutional officer and the incident in question involved her duty of hiring and discharging the personnel of her office. Clearly, the release which she issued had a real relation to the general matters committed by law to her control and supervision. It has long been recognized that a defamatory statement issued by a public official in the proper discharge of his official duties is absolutely privileged. This is the purport of SDC 47.0503 which provides:

"A privileged communication is one made:

(1)   In the proper discharge of an official duty;

(2)   In any legislative or judicial proceeding, or in any other official proceeding authorized by law."

See also Restatement of the Law, Torts, § 591; Harper & James, Law of Torts, p. 429; Prosser, Law of Torts, 3d Ed., § 109. The defense of absolute privilege or immunity under the law of defamation avoids all liability.   In issuing the press release in question defendant Larson enjoyed absolute privilege even if it contained false or inaccurate statements, which we need not determine.   Consequently, discovery concerning the truth of the release or her purpose and state of mind in issuing it would be meaningless.                                               .

Whether defamatory statements made concerning public officials are actionable is now a matter of Federal Constitutional Law.   Concerning this the Minnesota Supreme Court in Rose v. Koch, 278 Minn. 235,  154 N.W.2d 409, made the following observation:

"Beginning in 1964 with New York Times Co. v. Sullivan, 376 U.S. 254,  84 S.Ct. 710,  11 L.Ed.2d 686, 95 A.L.R.2d 1412, the United States Supreme Court has established a new law of libel, with constitutional dimension.   State laws of libel that fail to provide safeguards for freedom of speech and of the press, guaranteed by the First Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment, are constitutionally deficient."

That these plaintiffs are public officials within the definition of that case is not questioned. See 19 A.L.R.3d 1361. The presentation of the matter here was on that basis. Manifestly, the publications in question concerned the conduct of governmental affairs.   The fact that plaintiffs might have resigned their positions before the publications in question, which we need not resolve, does not alter their situation. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669,  15 L.Ed.2d 597. Who are public officials in this context is not determined by reference to state law.

684

■ ■ Under the New York Times rule a public official is prohibited "from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." See also 20 A.L.R.3d 988. Further, the rule provides that the showing of malice may not be presumed. The burden of establishing it is on the plaintiffs. This rule is binding on the states.

In preparing and disseminating the dispatch involved the AP was merely reporting what others had said or written. It did not purport to be the result of its own investigation. The dispatch was prepared by AP's representative stationed in our capitol, who, it is fair to infer, was acquainted with the plaintiffs. In his affidavit in support of the motion for summary judgment he stated he had no reason to believe that any of the statements contained in such press release were untrue or false; that it was a fair, accurate and complete account of the releases of the Secretary of State and Attorney General; and that it was not published for the purpose of causing harm to any person. The counter affidavits submitted on behalf of the plaintiffs do not dispute or deny these statements, except conclusionally.

■ On the question of malice on the part of the AP the plaintiffs claim only that its representative was aware of their resignations two days prior to the release and made no attempt to check or verify such release with them. As to the Journal they claim that the affidavit of its wire editor in support of the motion for summary judgment should have been made by another person and that this editor, who apparently was not acquainted with them, placed the following caption on the January 5th release: "Pierre Resignations Touch Off Probe". Principally their counter showing on the motions sets out facts and conclusions to establish malice on the part of defendant Larson. This, in view of her absolute privilege, is immaterial. Such matters are not the responsibility of these defendants, nor do they have any bearing on their claims of conditional privilege.

██ In considering the plaintiffs' claims against AP and the Journal it is proper to observe that SDC 47.0503 defines a privileged communication as one made:

"(4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof."

and provides that:

"In the cases provided for in subdivision * * * (4) of this section, malice is not inferred from the communication or publication."

Under this section a communication is made without malice if it was made in good faith and with reasonable grounds for believing the truth of the statement. Egan v. Dotson, 36 S.D. 459, 155 N.W. 783, Ann.Cas. 1917A 296. This rule does not satisfy the guarantees of the First Amendment to the U. S. Constitution.

██ In Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, it was held that statements made with personal malice and without reasonable grounds to believe them true were not sufficient to show reckless disregard because even where personal malice is present defeasance of the protection cannot be based on unreasonableness or mere negligence. Clearly, our state law standard for determining whether the conditional privilege has been destroyed by malice in cases like this does not measure up to federal constitutional requirements. That issue in this matter must be determined under the First Amendment to the United States Constitution.

██ Plaintiffs take the position that AP's failure to make a further investigation into the matter before disseminating its dispatch constitutes malice. This was their only contention in this area in argument and for which they submitted proof in resistance of the motion for summary judgment. This view has been rejected by the U. S. Supreme Court. In New York Times it held that the failure of defendant to investigate the validity of statements was constitutionally insufficient to show reckless disregard.

In St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, after reviewing its opinions in New York Times and Garrison, and Justice Harlan's opinion in Curtis Publishing Co. v. Butts and Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the court concluded that these cases stand for the proposition that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. The Minnesota Supreme Court said that malice as to public officials under the First Amendment rule is more than negligence and is probably more than highly unreasonable conduct. Rose v. Koch, supra. See also Williams v. Hobbs, 81 S.D. 79, 131 N.W.2d 85. Plaintiffs do not claim nor do their proofs show any "reckless disregard for the truth" on the part of AP or the Journal.

In Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456, where the New York Times rule was applied in a privacy case, the court gave this reason for so holding:

> "A negligence test would place on the press the intolerable burden of guessing how a jury might assess the reasonableness of steps taken by it to verify the accuracy of every reference to a name, picture or portrait."

Concerning this matter of investigation in New York Times Company v. Connor, 5 Cir., 365 F.2d 567, it is written:

> "While verification of the facts remains an important reporting standard, a reporter, without a 'high degree of awareness of their probable falsity,' may rely on statements made by a single source even though they reflect only one side of the story without fear of libel prosecution by a public official."

See also Beckley Newspaper Corporation v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248, and Ross v. News-Journal Company, Del., 228 A.2d 531. To predicate liability on an innocent or negligent misstatement would discourage the press from ex-

ercising the constitutional guarantees which are for the benefit of the public as well as the press.

■ RCP 56(c) pursuant to which the motions for summary judgment were made provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Durasteel Co. v. Great Lakes Steel Corp., 8 Cir., 205 F.2d 438, in an opinion written by the late Chief Judge Gardner, it is said:

> "An issue of fact is not genuine unless it has legal probative force as to a controlling issue   *   *   *   The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment."

See also Elbow Lake Cooperative Grain Co. v. Commodity Credit Corporation, 8 Cir., 251 F.2d 633, and Neff v. World Publishing Co., 349 F.2d 235. As to the liability of these defendants the decisive question was whether their conditional immunity had been defeated. On this there were no genuine issues as to the material facts.

■ This issue was held properly decided in the publishers' favor on motions for summary judgment in Pulvermann v. A. S. Abell Co., 4 Cir., 228 F.2d 797 and Ross v. News-Journal, supra. Denying such relief on motions for summary judgment was held error in News-Journal Co. v. Gallagher, Del., 233 A.2d 166; Gilberg v. Goffi, 21 App.Div.2d 517, 251 N.Y.S.2d 823, 19 A.L.R.3d 1348, and Washington Post Co. v. Keogh, 125 App.D.C. 32, 365 F.2d 965, 20 A.L.R.3d 972. On this record we think that a jury question would not be presented on this issue and a di-

rected verdict would be obligatory. In our view there is no genuine issue as to any material fact and the defendants were entitled to judgment as a matter of law. Accordingly, discovery would have been without any legitimate purpose.

Affirmed.

All the Judges concur.