## DR. J. F. COOLEY *v.* FIRST NATIONAL BANK OF LITTLE ROCK, ARKANSAS

82-68                                                635 S.W.2d 250

Supreme Court of Arkansas
Opinion delivered June 21, 1982

*James E. Smedley,* for appellant.

*Joe D. Bell* of *Friday, Eldredge & Clark,* for appellee.

STEELE HAYS, Justice. This suit was brought on behalf of the Committee for Peaceful Co-Existence, Inc. by appellant, Dr. J. F. Cooley, alleging negligence and breach of contract by First National Bank in the handling of a joint checking account. After hearing the evidence, the Chancery Court held the claim was barred by the three-year statute of

limitations (Ark. Stat. Ann. § 37-206 [Repl. 1962]), and the only issue on appeal is whether the chancellor's ruling is clearly erroneous. We find no basis for a reversal of his ruling.

On August 29 of 1969, Dr. J. F. Cooley, Rev. Cato Brooks, as co-chairmen, and Rev. V. Castle Stewart, as a board member, opened a checking account in the name of the Committee for Peaceful Co-Existence. The signature card authorized the bank to honor checks drawn by any two of the three authorized signatures. All bank statements were to be sent to post office box no. 1787, the Little Rock address of the Committee for Peaceful Co-Existence. Dr. Cooley insists he never received a bank statement until after this suit was filed in December, 1976, but he concedes that three other persons, including Rev. Brooks, had access to the post office box. On February 16, 1970, the account name on the signature card was changed, apparently by Rev. Brooks and Rev. Roy L. Laird, to the Mobile Section of the Committee for Peaceful Co-Existence. Withdrawals required both signatures. In March 1970, some 22 checks totaling over $4,000 were drawn on the account by Rev. Brooks and either Rev. Stewart or Rev. Laird.

As early as November 1969, Dr. Cooley suspected that unauthorized withdrawals were being made from the account. He notified the bank verbally in November 1969 and by letter on March 26, 1970. He asked that copies of past statements and cancelled checks be sent to him, to no avail.

Dr. Cooley testified that around April 1, 1971, he went to the bank and demanded the records; he was told to come the next day to pick them up, but when he returned a bank officer told him someone from the committee had already claimed the. records earlier that morning. The bank then refused to give him the records because of the conflict within the committee and the bank's uncertainty as to who was actually authorized to receive the records. Dr. Cooley said he made numerous inquiries and hired three attorneys between 1969 and 1976, and after this suit was filed the chancellor entered an order directing the bank to provide the committee

with all records and documents relative to the disputed account.

Appellant argues the statute of limitations was tolled by his letter of March 26, 1980, requesting records and directing the bank to stop honoring drafts on this account. He relies on Ark. Stat. Ann. § 85-4-406 (Add. 1961), which requires a bank to make statements reasonably available to customers. Dr. Cooley maintains he never received a bank statement nor was one ever made available to him.

Dr. Cooley's only argument on appeal is the statute of limitations never started to run because the bank failed to make bank statements available. But whether the bank statements were sent was, of course, a question of fact. The chancellor resolved the issue in the bank's favor and his finding will not be set aside unless clearly erroneous. ARCP Rule 52. The bank offered credible evidence at trial that the statements were mailed to post office box no. 1787, as designated on the signature card. Even after the signature card was changed, the mailing address for the bank statements continued to be post office box 1787. Joy Greer, a senior vice president in charge of the bank's communications division, testified the only monthly statement addressed to the post office box which was returned to the bank was not until after the post office box had been closed out. Where bank statements are mailed to the address provided by the depositors as reflected on the signature card, we believe they are "available" within the meaning of Ark. Stat. Ann. § 85-4-406. Further, the usage and custom of a bank in delivering statements and cancelled checks to its depositors is competent evidence to prove delivery was effectuated. *England Nat'l Bank* v. *United States,* 282 F. 121 (8th Cir. 1922).

The bank's payment of a check or withdrawal on less than the required number of signatures renders the signature "unauthorized" within the meaning of Ark. Stat. Ann. § 85-4-406 and requires the customer to discover and report it within one year from the time the statement and items are made available. *Pine Bluff Nat'l Bank* v. *Kesterson,* 257 Ark. 813, 520 S.W.2d 253 (1975); *First National Bank of*

*Springdale* v. *Hobbs,* 248 Ark. 76, 450 S.W.2d 298 (1980); Ark. Stat. Ann. § 85-4-406 (4).

Dr. Cooley's testimony reveals he believed there were unauthorized withdrawals of money as early as November of 1969, yet he did not bring suit until December, 1976. In conclusion, we believe the evidence in the record is more than sufficient to support the chancellor's conclusion that Dr. Cooley had knowledge of unauthorized withdrawals and yet failed to act within the time allowed under the statute of limitations.

Affirmed.

ADKISSON, C.J., not participating.