**SPEARS CARPET MILLS, INC., Appellant,**

v.

**CENTURY NATIONAL BANK OF NEW ORLEANS, Robert Masson, G & A Carpet Mills, Inc., Dale Black and Gilbert Federbush, Appellees.**

Civ. No. 87–4089.

United States District Court, W.D. Arkansas, Texarkana Division.

April 22, 1988.

Mark Nichols, Little Rock, Ark., Claude S. Hawkins, Jr., Ashdown, Ark., for appellant.

Claudia Sue Dunn, New Orleans, La., William Owen, Little Rock, Ark., for appellees.

## MEMORANDUM OPINION

### MORRIS SHEPPARD ARNOLD, District Judge.

This is an appeal from the bankruptcy court's dismissal of a trustee's complaint in an adversary proceeding against a bank. The trustee claimed that the bank had honored certain items presented for payment against the debtor's account and that such payments were both negligent and in breach of its contract with debtor. The bankruptcy judge held that the Louisiana version of U.C.C. § 4–406(4) barred the trustee's claim as to most of the items paid. As to the other items, the bankruptcy judge found that the facts did not establish a basis for finding the bank liable. 86 B.R. 985 (Bankr.W.D.Ark. 1987).

### I.

In June of 1981, debtor Spears Carpet Mills (SCM) opened a checking account with Century National Bank of New Orleans (the bank). At the time the account was opened, SCM and the bank entered into a contract which required the approval of two of SCM's officers, one of whom would have to be the president, for all withdrawals by "checks, drafts, letters of instructions, or other instruments or orders for the payment of money...."

Beginning in June, and continuing through October, 1981, a large number of wire transfers from SCM's account were effected by the bank, none of which, the bankruptcy court found, was for a legitimate business purpose of SCM. In addition, in August of 1981 the bank honored a counter check for $50,000.00 despite the fact that it bore the signature of only one of SCM's officers.

### I.

■ The trustee claims that all of these items were wrongfully paid because their payments had not been authorized, as required by the relevant contract, by two officers of SCM. The court begins its consideration of this claim with the observation that the relevant contract does not require the signature of two of SCM's officers before withdrawals can be made, only their approval. This is in harmony with the normal banking practice to honor oral wire transfer requests if they are made by the number of people required by a depositor's contract. The court understands the bankruptcy judge to have found as a matter of fact that the bank had followed the required procedure before effecting the wire transfers in question, that is, it required the approval of two corporate officers. (*See* pages 18 and 19 of the lower court's opinion dated June 1, 1987). The bankruptcy court was apparently of the view that the evidence that procedures were usually followed was sufficient to allow the conclusion that they were followed in the instances complained of here. There is ample evidence in the record to support this conclusion; it is certainly not clearly erroneous.

■ With respect to the counter check, however, the evidence is uncontradicted that it was honored despite the fact that only one signature appeared on it. With

respect to this instrument, and any others found to have been wrongly paid, the bank offers the defense provided by the Louisiana version of U.C.C. § 4–406(4). That statute provides that a bank customer who does not notify a bank within a year of receiving a bank statement of any items that contain an "unauthorized signature" is "precluded from asserting against the bank such unauthorized signature...." The question presented in this case is whether the counter check contains an "unauthorized signature" within the meaning of the statute. It is conceded that Louisiana law controls this question, but the Louisiana courts have not directly addressed the issue. There is certainly no unanimity among the courts that have considered this difficulty. Some have held that checks with fewer than the necessary number of signatures are not checks with an "unauthorized signature" and do not apply § 4–406(4), perhaps because they are disinclined "to allow banks to hide behind a bank protection clause written by bankers." J. White & R. Summers, *Uniform Commercial Code* § 17–3 at 658 & n. 26 (2d ed. 1980). *See In re Florida Airlines, Inc.*, 57 B.R. 113, 4 U.C.C. Rep.Serv. (Callaghan) 15 (Bankr.M.D.Fla.1986); *G & R Corp. v. American Sec. & Trust Co.*, 173 U.S.App.D.C. 215, 523 F.2d 1164, 18 U.C.C. Rep.Serv. (Callaghan) 33 (1975); and *Wolfe v. University Nat'l Bank*, 270 Md. 70, 310 A.2d 558, 13 U.C.C.Rep.Serv. (Callaghan) 661 (1973). Other courts choose to interpret a contractual requirement of multiple signatures as requiring one collective signature, and thus anything falling short of that is an "unauthorized" signature under § 4–406. The bankruptcy court chose to follow the Arkansas case expressing this latter view, namely *Pine Bluff Nat'l Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253, 16 U.C.C.Rep.Serv. (Callaghan) 805 (1975). *See also King of All Manufacturing, Inc. v. Genessee Merchants Bank & Trust Co.*, 69 Mich.App. 490, 245 N.W.2d 104 (1976); *Rascar, Inc. v. Bank of Oregon*, 87 Wis.2d 446, 275 N.W.2d 108 (Ct.App.1978); *Cooley v. First Nat'l Bank*, 276 Ark. 387, 635 S.W.2d 250 (1982); and *Provident Sav.*

*Bank v. United Jersey Bank*, 207 N.J.Super. 303, 504 A.2d 135 (Law Div.1985).

In choosing to follow the lead of the Arkansas Supreme Court on this question, the bankruptcy judge, in this court's view, chose the more reasoned and therefore the more proper course. The policy behind § 4–406(4) is to require customers to employ reasonable diligence in inspecting statements provided by banks and to report irregularities. This is hardly a burdensome requirement, and, in any event, is one that the legislature has decided to impose. The argument that a single signature on a disputed item is not "unauthorized" because it is among those that were in fact authorized is hypertechnical and, moreover, misses an essential point, namely, that the "customer" whose authorized signature must appear on instruments is an entity, in this case, Spears Carpet Mills. A signature by only one of the persons authorized to sign instruments is not an authorized signature of SCM and is therefore not an authorized signature of the customer. *See generally*, Kreig, *The Missing Signature as an Unauthorized Signature of the Customer: The Debate Continues*, 103 Banking L.J. 542 (1986).

## II.

■ Appellant argues in the alternative that, even if U.C.C. § 4–406(4) applies to this kind of defective instrument, 11 U.S.C. § 108(a) tolls its operation. The latter statute provides that "[i]f applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action ... the trustee may commence such action only before ... two years after the order for relief." Since the instant bankruptcy action was filed in November of 1981, only five months after the earliest transaction that it seeks to set aside, appellant concludes that the operation of § 4–406(4) has been suspended.

The infirmity in this argument is that § 4–406(4) does not fix "a period within which the debtor may commence an action." It is not a statute of limitations; it creates "a rule of substantive law which is a condition precedent to any action," name-

ly, the giving of notice. *Pine Bluff Nat'l Bank v. Kesterson,* 257 Ark. at 822, 520 S.W.2d 253. The Louisiana courts, whose law concededly applies here, capture this idea by calling § 4–406(4) a "statute of peremption." *See William M. Barrett, Inc. v. First Nat'l Bank,* 191 La. 945, 186 So. 741 (1939). La.Civ.Code Art. 3458 states: "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremption period." It follows that the bankruptcy judge correctly applied § 4–406(4) to the case at bar.

The bankruptcy judge rightly concluded that the trustee's complaint with respect to the items discussed above should have been dismissed.

### III.

Because the instant adversary proceeding was filed on September 29, 1982, and put the bank on notice that SCM believed that some items honored by the bank contained unauthorized signatures, the bankruptcy judge held that the bar of § 4–406(4) would not reach to items received in the statements for September and October of 1981. The bankruptcy judge went on to conclude, however, that the trustee failed to prove that the bank had acted negligently and that finding is not by any means clearly erroneous. It is true that the bankruptcy court also held, as an alternative, that the negligence claim was improper in any case since the only action that SCM could possibly have sounded in contract. The court is inclined to doubt that this holding is correct, but notes that there are some Louisiana cases that seem to point in that direction. *See e.g., Strother v. National Am. Bank,* 384 So.2d 592 (La.App.1980). But the error in law, if any, is clearly cured by the factual finding that the bank was not negligent.

### IV.

Finally, SCM claims that the court below erred in finding that the bank did not act negligently when it failed to name a remitter on a cashier's check charged to SCM's account for \$162,000.00 and "backed out" some items that had already cleared the account thus making it possible for the cashier's check to clear. The court has carefully examined the record and finds that it amply supports this finding.

### V.

Finding no error in the judgment below, the court will affirm it in all respects.