Marjorie LAMP, Administratrix With Will Annexed of the Estate of Louise Edmundson, Deceased, Plaintiff and Appellant,

v.

FIRST NATIONAL BANK OF GARRETSON, South Dakota, Defendant and Appellee.

No. 17693.

Supreme Court of South Dakota.

Argued May 28, 1992.

Reassigned Oct. 19, 1992.

Decided Feb. 3, 1993.

Wuest, J., filed separate opinion concurring in part and dissenting in part.

Henderson and Amundson, JJ., filed separate dissenting opinions.

Jerome B. Lammers, Lammers, Lammers, Kleibacker & Parent, Madison, for plaintiff and appellant.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

SABERS, Justice (On reassignment).

Marjorie Lamp (Lamp) appeals from summary judgment in favor of First National Bank of Garretson (Bank). We reverse and remand for trial.

## FACTS

Lamp is the administratrix of the estate of her mother, Louise Edmundson (Ed-mundson). Edmundson was residing in a nursing home in Garretson, South Dakota, at all times relevant to this appeal. Edmundson maintained a checking account at Bank, and her daughter, Carol Braa (Braa) was named as an authorized signature on the account. Edmundson also owned a Time Savings Certificate (CD) issued by Bank which is the subject of this appeal. Braa was not, however, an authorized signature on the CD.

On August 7, 1985, Braa negotiated this CD for deposit in the checking account by signing her and Edmundson's names to the back of the CD. The amount deposited was $42,695.51. The amount of this deposit was noted on the September, 1985, checking account statement. An IRS Form No. 1099 reflecting the payment of the CD was sent to Edmundson no later than January 31, 1986.

On December 31, 1987, Edmundson wrote a letter to Bank's president, Allan Hammer (Hammer), advising that she had been informed that her money was gone, never had access to her bank statements, and requesting an accounting of all her banking transactions from June 1, 1983, to July 31, 1987. Hammer responded by letter on January 4, 1988, informing Edmundson that she could get that accounting from Braa but that if she wanted Bank to provide same, it would do so. Edmundson died on April 10, 1988, without having received the requested accounting.

Lamp and her brother, Milton Edmundson (Milton) commenced an action against Bank on July 3, 1990, alleging that it had permitted Braa to endorse the CD by forgery, and that by reason of such forgery, Braa was able to convert those funds to her own use. After completion of discovery, Bank moved for summary judgment on the ground that no notice had been given Bank of the forgery and therefore, the action was precluded by the statute of limitations. Trial court granted summary judgment in favor of Bank based on the statute of limitations and dismissed Lamp's action. Lamp appeals.

## ISSUE

Whether genuine issues of material fact exist precluding summary judgment in favor of Bank regarding notice of the forgery of the CD under SDCL 57A–4–406(4).

We hold that genuine issues of material fact exist precluding summary judgment.

### Summary Judgment

■ Our standard of review for a grant or denial of summary judgment is well settled. In *Waddell v. Dewey County Bank*, we stated:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey Cnty. Bank*, 471 N.W.2d 591, 593 (S.D.1991) (citations omitted).

"Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony. . . . It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely."

*Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991) (quoting *Wilson v. Great N.R.R. Co.*, 83 S.D. 207, 212–13, 157 N.W.2d 19, 22 (1968) (citations omitted)). In reviewing a grant of summary judgment, we are not bound by the trial court's factual findings and must conduct an independent review of the record. *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 499 (S.D.1990); *Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D.1988).

Lamp argues that Braa's endorsement of Edmundson's CD constituted an unauthorized endorsement and that this fact was discovered and reported to Bank within the three-year statutory limitation period. SDCL 57A–4–406(4) provides:

Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item *or does not within three years from that time discover and report any unauthorized endorsement* is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration. (Emphasis added.)

There is no dispute that Bank sent statements to Edmundson concerning her account and that she would have received an IRS form 1099 no later than January 31, 1986. Accordingly, the three-year period would not have run until January 31, 1989 under SDCL 57A–4–406(4). The "notice," which Lamp argues was sufficient, was the December 31, 1987, letter Edmundson wrote to Bank. The trial court concluded this letter did not provide adequate notice to Bank that the CD had been negotiated with an unauthorized signature. Edmundson's letter to Hammer states:

I have been informed that my money is gone. I have never had access to my bank statements. I would appreciate an accounting of all banking transactions from June 1, 1983 to July 31, 1987. My account is # 9–083–7. Thank you.

■ We must determine whether a genuine issue of material fact exists and whether the trial court correctly applied SDCL 57A–4–406(4). *Waddell*, 471 N.W.2d at 593. We think a fair reading of Edmundson's letter put Bank on notice that Edmundson wanted an accounting of her

checking account # 9–083–7. There is no mention, however, of Braa, any endorsement or unauthorized signature, or Edmundson's CD. Nothing in Edmundson's letter mentions that the CD had been negotiated, much less negotiated with a forged endorsement. Accordingly, we find nothing in this letter which put Bank on the notice required by SDCL 57A–4–406(4) that Braa's unauthorized signature or endorsement appeared on Edmundson's CD.

Lamp asserts that Bank teller Mary Schreurs (Schreurs) negotiated the CD for Braa and was aware of the unauthorized endorsement and, therefore, Bank was on notice. Schreurs stated in her deposition that she did not recall whether Braa endorsed the CD in her presence, only that Braa presented the CD for payment. Schreurs also stated that while she was unaware of any actual authority Edmundson had given Braa to negotiate the CD, she perceived no problem since the money was being deposited into Edmundson's checking account.

■■■ The fact that Schreurs claims in her deposition that "she did not recall whether Braa endorsed the CD in her presence," is immaterial because *it was a forgery*, whether it was endorsed in or out of her presence. Carol Braa signed her mother's name to the CD and converted the funds to her own use.[1] The Bank has the mother's signature on file and is, therefore, bound by it. At the very least, the evidence raises a genuine issue of material fact whether the Bank had notice pursuant to SDCL 57A–4–406(4). *Id.* Therefore, the

trial court erred in its conclusion that no genuine issue of material fact existed concerning the plaintiff's right to assert an action against Bank. *Koeniguer*, 422 N.W.2d at 602–03.

Lamp and Milton also argue they gave Bank notice of Braa's unauthorized endorsement through conversations they had with Bank officials in the summer of 1988. The record reflects that neither Lamp nor Milton placed a date on these conversations during their depositions, but instead submitted an affidavit in resistance to Bank's motion for summary judgment placing a date on these conversations of "prior to August 1, 1988." The trial court concluded that the statements in the affidavit contradicted the deposition testimony of Lamp and Milton and held that this affidavit did not raise a genuine issue of fact. We disagree.

The record reflects that in Lamp's deposition she stated she learned of the CD cashed by Braa "sometime in 1988." She also stated she had spoken with Hammer several times, remembering specific discussions about the status of the checking account, although never about the CD.

■■■ The record also reveals that Milton stated in his deposition that he was present during one of Lamp's conversations with Hammer and that Hammer had said Bank made a mistake.[2] Milton did not ask Hammer what the mistake was and the CD was not specifically mentioned in this conversation. The Bank claims that this deposition

---

1. Bank's ultimate liability, if any, would depend on the extent to which Lamp can prove Braa converted the funds to her own use.

2. Milton's testimony was as follows:
  Q (Counsel) Mrs. Lamp had indicated that you were present on an occasion when—on two occasions, I guess, when you visited with Allan Hammer at the bank concerning your mother's account?
  A (by Milton) And I've been sittin' here thinking about that.
  Q All right. Tell me whether you have any other information you can add as to what was discussed on those visits.
  A When we went in there, why, Marjorie said, we sure got a big surprise, she said, about this thing. And he says, it's a big sur-

prise to me, too, he said. So he went in the back room and he came back and—slumped down in his chair and he put his hands (indicating). He says, I guess we've made a mistake. That's the words he said.
  Q Okay. Any other discussion other than that?
  A No. That was it.
  Q On either visit?
  A Nope.
  Q You didn't ask him what the mistake was?
  A No, no. But that's the words he said.
  Q Okay. No other questions from you or anybody else?
  A No. I never said a word, but I could just, just like it was yesterday. I guess we've made a mistake, he said.

testimony is insufficient to give the required notice because neither Lamp nor Milton specified that the mistake was the forgery or the unauthorized endorsement. For summary judgment purposes, the Bank cannot pretend not to know what this mistake was. Even if the Bank could, ostrich-like, pretend not to know the specifics of the mistake, knowing of the "mistake" itself was enough to put the bank on notice of the claim.

On summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. That means every reasonable inference. All reasonable doubts must be resolved against the moving party. *Id.* at 601 (citations omitted). Viewed properly in this light, it appears that the mistake was paying out over a forged or unauthorized endorsement which was discovered and reported within three years. SDCL 57A-4-406(4). The deposition testimony established notice to Bank within three years or a genuine issue of material fact which precludes summary judgment. *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989). Summary judgment is an extreme remedy not appropriate for disposing of factual issues or as a substitute for trial. *Koeniguer*, 422 N.W.2d at 601 (citations omitted); *Wilson*, 83 S.D. at 212, 157 N.W.2d at 21 (citations omitted).

As noted above, Lamp and Milton filed a joint affidavit in opposition to Bank's motion for summary judgment which stated "[t]hat prior to August 1, 1988, affiants discussed with Defendant bank president, Allan Hammer, that the said certificate of deposit had been improperly endorsed and cashed by Braa." The affidavit further stated that Hammer "admitted to affiants that the bank had made a mistake in permitting this certificate of deposit to be cashed and in failing to know what use was being made of the funds."

■ It is well settled that a party cannot claim the benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony. *Waddell*, 471 N.W.2d at 595, n. 3 (citations omitted); *Lalley v. Safway Steel Scaffolds,*

*Inc.*, 364 N.W.2d 139, 141 (S.D.1985); *Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570, 572 (S.D.1979) (citation omitted). The affidavit of Lamp and Milton, however, did not contradict their deposition testimony. They both clearly pointed out the reaction of the banker and his statement regarding the mistake on the part of the Bank. Although neither Lamp nor Milton placed an exact date on this event, Lamp stated that she could recall the date by looking in her checkbook. And the deposition of Milton was so cursory as to provide no opportunity for him to pinpoint the date of this conversation. Therefore, Lamp and Milton's affidavit was not necessary, much less "rendered ineffective," as claimed.

■ With questions of fact, doubts must be resolved against the Bank as the moving party. The Bank has failed to establish that there is *NO* genuine issue of material fact. The trial court's decision is contrary to recent summary judgment law in South Dakota, especially *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1 (S.D.1989), a unanimous opinion written by Justice Henderson where we reversed the trial court because the moving party failed to sustain its burden that there were no genuine issues of material fact. Where reasonable persons might reach different conclusions, summary judgment should be denied. *Dahl v. Sittner*, 429 N.W.2d 458, 461 (S.D. 1988) (citation omitted).

No one is entitled to summary judgment unless entitled thereto as a matter of law and there are no genuine issues of material fact. SDCL 15-6-56(c). Here, the trial court incorrectly placed the burden upon the non-moving party instead of upon the moving party, the Bank. For all of the above reasons and all of the well-reasoned summary judgment cases in South Dakota, summary judgment was improper. (*See Wilson v. Great N.R.R. Co.* and its progeny.) Therefore, we reverse and remand for trial.

MILLER, C.J., concurs.

WUEST, J., concurs in part and dissents in part.

HENDERSON and AMUNDSON, JJ., dissent.

WUEST, Justice (concurring in part and dissenting in part).

I concur with the majority opinion on the Lamps' and Miltons' joint affidavit filed in opposition to Banks' motion for summary judgment. In my opinion, the joint affidavit supplements their deposition and creates a fact issue which must be resolved by trial. Therefore, in my opinion, the trial court erred in granting summary judgment.

On the other issues, I agree with the dissent of Justice Amundson.

HENDERSON, Justice (dissenting).

Marjorie Lamp sued the wrong party, to-wit: The Garretson Bank—Bank was not, and is not, the wrongdoer. Carol Braa is the wrongdoer. Lamp is suing a target defendant.

Failure to give the requisite notice pursuant to SDCL 57A-4-406(4) is, by overwhelming authority, an absolute bar to suit on the alleged forged instrument. *Spears Carpet Mills, Inc. v. Century National Bank of New Orleans*, 85 B.R. 86 (W.D.Ark.1988); *Jensen v. EssexBank*, 396 Mass. 65, 483 N.E.2d 821, 41 U.C.C. Reporting Service 1366 (1985); *Space Distributors, Inc. v. Flagship Bank of Melbourne*, 402 So.2d 586, 32 U.C.C. Reporting Service 517 (Fla.App.1981); *Indiana National Corp. v. FACO, Inc.*, 400 N.E.2d 202, 29 U.C.C. Reporting Service 194 (Ind. App.1980); *Board of Higher Education of City of New York v. Bankers Trust Co.*, 86 Misc.2d 560, 383 N.Y.S.2d 508 (N.Y.Sup.Ct. 1976); *Kiernan v. Union Bank*, 55 Cal. App.3d 111, 127 Cal.Rptr. 441, 18 U.C.C. Reporting Service 1026 (1976); *Pine Bluff National Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253, 16 U.C.C. Reporting Service 805 (1975).

Marjorie Lamp advocates that knowledge which the Bank had, or should have been aware of, will supplant the specific notice requirement imposed by the statute cited above. Such an argument will not feed the bulldog. Our Court addressed such advocacy in *Flaherty v. Bank of Kimball*, 75 S.D. 468, 68 N.W.2d 105 (1955). We analyzed, in *Flaherty*, a predecessor statute to the aforesaid statute. This Court barred a state claim against the bank and set forth our observations:

> The question presented is whether or not a bank is relieved of liability irrespective of its knowledge of the facts or negligence in the first instance if a depositor fails to give notice in conformity with this statute. In *Herbel v. People's State Bank of Ellinwood*, 170 Kan. 620, 228 P.2d 929, 934, construing a similar statute, the Court said "that the bank was not liable unless the depositor notified the bank in conformity to the provisions of the statute." And such nonliability of the bank resulted by virtue of the statutes irrespective of the bank's negligence. That is the clear legislative mandate and the courts are bound by it. The *McCormick v. Rapid City Nat. Bank* case [67 S.D. 444, 293 N.W. 819] impliedly recognizes that such is the effect of the statute.

68 N.W.2d at 109.

SDCL 57A-4-406 requires a *specific* notice. Lamp's case rests on the letter. Edmunson requested an accounting of her *checking account.* Edmunson expressed nothing concerning a CD being negotiated or a *forgery.* Without factual support for the claim that *a notice of forgery* was given, the suit of Marjorie Lamp is barred by SDCL 57A-4-406(4). *Flaherty* at 109.

The majority writer's reliance on *Taggart* borders on the ludicrous. An eleventh hour affidavit was there filed (in the case before us it is also "eleventh hour" and contradictory) to create an issue of fact (the same as in this case). In 1990, the South Dakota Supreme Court would have no part of such legal shenanigans. At 503 of *Taggart*, we deplored such a ruse and expressed:

> In *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983), *the court was quick to pierce the ruse of a contradictory affidavit submitted for*

*the purpose of creating a material issue of fact when there was no explanation for the change in testimony from the deposition to the affidavit.* Echoing our sentiment, the Eighth Circuit said:

> If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.
>
> ... Likewise, barring an explanation for his change in testimony or a showing that his answers were ambiguous and the affidavit clarified them, Taggart's affidavit did not create a material issue of fact.... (Emphasis supplied mine).

In the name of consistency, I would not jettison our previous holdings in *Flaherty* or *Taggart.*

Summary judgment reaches, not just issues of material fact. Summary judgment also reaches the dismissal of actions, as a matter of law. In other words, if you take the facts and apply them to the law, then, as a matter of law, if the cause of action fails, the summary judgment should be entered. This is exactly the course of action which the trial court followed. Simply because there are issues of fact does not mean that a trial court cannot grant a summary judgment. It must be a *material* fact—*a fact related to the cause of action.* We said it like this, 10 years before I came to serve on this Court, as follows:

> If it is made clearly to appear on such a motion [summary judgment] that even though there is an issue [formal issue may be revealed by supporting affidavits] under the pleadings there is in fact *no dispute as to the controlling material facts,* then the court should enter summary judgment.

*Hackworth v. Larson,* 83 S.D. 674, 165 N.W.2d 705 (1969). There are, ordinarily, questions of fact in every lawsuit. Our courts cannot try every case where a fact issue arises. If some of the summary judgment students would walk the extra mile, they might peruse a case one year after the old grand-daddy (*Wilson*) was handed down: *Northwestern Public Service Co. v. Chicago & N.W. Ry. Co.,* 84 S.D. 271, 170 N.W.2d 351 (1969). In *Northwestern,* our language mentioned "a sham, frivolous, or unsubstantial fact" so "that it would be futile to try." If a trial court can reasonably hazard that the facts expose a "sham" or a "frivolous" lawsuit; or if a trial court can obviously conclude "that it would be futile to try" because there are no *material* facts at issue (as it reviews the pleadings), then why exercise futility? Again, mere issues of fact do not get you by a summary judgment motion. Sabers, J., takes it upon himself to quote a recent unanimous opinion written by this author, *Thiewes* in 1989. *Thiewes* is not inconsistent with this writing or the writing of Justice Amundson for, in *Thiewes,* the moving party did fail to meet its burden; to the contrary, in this case, the First National Bank met its burden as outlined above. Dice it or slice it, rub it or scrub it, the "cover up" affidavit, filed to contradict sworn testimony in a deposition, simply contradicts the credibility of the same party, which is not a valid probative force to create a material issue of fact; legally, it does not deprive the bank of its vital content and force to secure a summary judgment. *Taggart* at 503. My conclusion is: It is futile to try this case because the *controlling material facts* cannot be legally plugged into the alleged cause of action.

The trial court should be affirmed.

AMUNDSON, Justice (dissenting).

In this appeal, the trial court issued a letter opinion granting summary judgment. After receipt of this initial decision, counsel for the appellants wrote the trial court expressing shock with the court's decision. Counsel went on to state that in light of the sworn affidavits of his clients claiming to have discussed the improper endorsement of the CD with Bank's president, there was sufficient notice given under the requirements of SDCL 57A–4–406(4) so that a genuine, material issue of fact remained for trial.

The majority opinion first holds that since Bank had Mrs. Edmundson's signature on file that Bank is bound by it. There is nothing in SDCL 57A–4–406 which so states. In fact, this statute specifically reads at the onset as follows: "Without regard to care or lack of care of either customer or the *bank* ..." which certainly does not say that Bank is presumed to have notice of an unauthorized signature on a document whenever Bank has the customer's signature on file.[1] Nor does this section of the code, or for that matter any section referred to by the appellants or the majority opinion, equate notice as being given since a bank has a customer's signature on file in the bank. If this was the case, there would be no need for the lack of care language in the code. Further, a review of the record reveals that this binding of the Bank by a signature on file was not presented as a basis for resisting the summary judgment motion nor raised as an issue in this appeal. Matters which the trial court has not had an opportunity to consider cannot be raised on appeal. *Husky Spray Service, Inc. v. Patzer*, 471 N.W.2d 146, 153–54 (S.D.1991). Nor should this court raise new issues when deciding a case.

After the trial court received the letter expressing shock from appellants' counsel, it reconsidered the case. Relying on the precedent of the summary judgment decision of this court in *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493 (S.D.1990), the trial court reaffirmed its prior ruling. The trial court concluded after reviewing the pleadings, depositions, and affidavits that appellants could not claim a better version of the facts in their affidavit resisting the summary judgment motion than they had testified to during their deposition prior to the filing of the motion.

A review of this record certainly provides a basis for the trial court's holding. The appellants never gave Bank the required notice of the unauthorized signature, and Bank merely transferred the funds from Edmundson's CD account to her checking account. What happened to funds thereafter is apparently the basis for this dispute. This court in reviewing a motion for summary judgment adheres to the principle that an affirmance is proper if there exists any basis to affirm the lower court's holding. *Ruple v. Weinaug*, 328 N.W.2d 857, 859–60 (S.D.1983). The facts set forth in the majority and this dissent certainly provide that basis.

In her deposition, Lamp stated that she could not place a date on her conversation with Bank's president but did specifically admit that whenever this discussion took place, she did not discuss the CD or any alleged unauthorized signature on it with Bank's president. Likewise, Milton Edmundson's deposition testimony does not set forth any notice regarding the CD being given to Bank's president during any meetings where he was present.

The majority's reliance on the admission of a mistake does not satisfy the customer's duty to notify Bank of the unauthorized signature. The admission of an alleged mistake certainly is no more than admitting to "lack of care" which, pursuant to the statute, does not equate to notice. In fact, the sworn deposition testimony of Lamp and Edmundson does not even place a time when the mistake admission was made. On the other hand, when confronted with the motion for summary judgment, Lamp and Edmundson conveniently were able to remember exactly when this discussion took place in order to resist the motion, thereby attempting to create an issue of genuine fact which was not preserved in their sworn deposition testimony.

1. In 7 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 4–406:15 (3rd ed. 1985), the author discusses the object of SDCL 57A–4–406(4) and states:

> The time limitations of UCC § 4–406 are a substantive bar that destroy the right to sue the bank, regardless of the theory on which plaintiff brings suit.

> The one and three year limitations imposed by UCC § 4–406(4) are not merely statutes of limitations but are rules of substantive law that define the scope of the customer's remedy and absolutely bar a customer's claim that is not timely made "without regard to the care or lack of care of either the customer or the bank."

The Lamp and Milton affidavits filed in opposition to Bank's motion for summary judgment stated that their conversation with Bank's president occurred on August 1, 1988, within the statutory time frame, and more specifically the topic of the forgery on the CD was discussed. The affidavits clearly conflict with the deposition testimony. The trial court had to resolve this conflict and, in my opinion, did so correctly. I would affirm the trial court. The majority holding awards appellants the proverbial deep pocket to pursue, but the appellants should be required to seek recovery from their sister Braa, which an affirmance would require. By reversing the trial court, Bank has been placed in the position of an insurer for the dispute between the heirs of the estate.

