Daniel L. SATTERLEE, Plaintiff
and Appellant,

v.

David James JOHNSON and Matt
Johnson, Defendants and
Appellees.

No. 18633.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1994.

Decided Jan. 11, 1995.

Steven M. Christensen, Deadwood, and Terry L. Hofer of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for plaintiff and appellant.

Larry M. Von Wald of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendants and appellees.

MILLER, Chief Justice.

Appellant Daniel L. Satterlee (Satterlee) appeals the decision of the trial court granting summary judgment to Appellees David James Johnson (James) and Matt Johnson (Matt). (Appellees will be collectively referred to as Johnsons). Satterlee contends that the trial court erred in disregarding the affidavit of his expert witness and that there were genuine issues of material fact barring summary judgment. We affirm.

## FACTS

James owns several ranches in western South Dakota, including a ranch in Harding County known as the Dahlen Place. James' son, Matt, lives on the Dahlen Place and manages the ranch for his father. Satterlee began working for James as a ranch hand in October of 1991. He worked primarily on the Dahlen Place under the supervision of Matt.

On July 24, 1992, Satterlee injured his back while assisting Matt and Matt's flying instructor in starting an airplane. The following day, Satterlee rounded up sheep on horseback under Matt's direction. On Monday, July 27, 1992, Satterlee visited his chiropractor who told him he should not work for a while. Two days later, Satterlee's chiropractor authorized him to do light duty work. Satterlee returned to work the following day.

On Friday, July 31, 1992, one week after Satterlee's back injury, Matt told Satterlee to assist him with "working" seven calves confined in a corral on the ranch. This involved branding, dehorning, vaccinating, and castrating the animals. When working calves, Johnsons typically had one person on horseback rope the calf, while two others threw the calf to the ground and held it there. While the calf was being held down, another person or persons would perform the branding, dehorning, vaccination, and castration of the calf. The two individuals holding the calf would then release it.

The crew on this particular day consisted of Matt, Satterlee, Matt's wife, and a fourteen-year-old neighbor girl. The girl's role was to rope the calves. Matt and his wife were responsible for throwing and holding the calves. Because of the injury to his back, Satterlee was assigned the branding, dehorning, vaccinating and castrating duties. After performing this work on the first calf, Satterlee turned away to return the dehorning irons to the propane heater located in the corral. Matt and his wife then released the calf from their hold. The calf charged toward Satterlee. Matt's wife shouted to Satterlee to "Look out," and Satterlee turned to see the calf running toward him. To avoid being hit, Satterlee jumped and twisted out of the path of the calf. Although Satterlee was not hit by the calf, he severely injured his back in jumping out of the way.

On April 7, 1993, Satterlee filed suit against Johnsons, alleging they were negligent in various aspects of the branding operation. Johnsons denied any negligence.

The parties engaged in substantial discovery. Satterlee submitted answers to interrogatories posed by Johnsons and complied with Johnsons' request for production. Depositions were taken of Satterlee, James, Matt, Matt's wife, and the girl who assisted with the branding operation.

On December 7, 1993, Johnsons filed a motion for summary judgment as to all of Satterlee's claims. The parties submitted briefs on the motion and Satterlee and an expert witness on his behalf submitted affidavits in resistance to the motion. The judge, concluding there were no genuine issues of material fact, granted summary judgment to Johnsons on all claims against them. Satterlee appeals.*

## ISSUE

WHETHER THE TRIAL COURT ERRED IN GRANTING JOHNSONS' MOTION FOR SUMMARY JUDGMENT.

█ Summary judgment shall be granted ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). In making these determinations, the

---

* In a letter dated January 11, 1994, the judge also stated he disregarded the affidavit of Satterlee's expert, because the affidavit "states an opinion but fails to set forth underlying evidentiary facts in support of the opinion." On appeal, Satterlee claims the trial court erred in disregarding the affidavit of Satterlee's expert.

Satterlee fails to cite any supporting authority for his assertion that the trial court erred in this regard. "The failure to cite supporting authority is a violation of SDCL 15-26A-60(6) and the issue is thereby deemed waived." *Corbly v. Matheson*, 335 N.W.2d 347, 348 (S.D.1983) (citing *Graham v. State*, 328 N.W.2d 254 (S.D.1982); *State v. Shull*, 331 N.W.2d 284, 285 (S.D.1983)).

trial court must review the facts in the light most favorable to the nonmoving party. *Merritt v. Edson Express, Inc.*, 437 N.W.2d 528, 529 (S.D.1989) (citing *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968)).

On appeal, our task is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 94 (S.D.1993) (citing *Lamp v. First Nat. Bank of Garretson*, 496 N.W.2d 581 (S.D.1993); *Waddell v. Dewey County Bank*, 471 N.W.2d 591 (S.D.1991)). We are not bound by the factual findings of the trial court and must conduct an independent review of the record. *Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D.1988). Affirmance is proper if there exists any basis which would support the trial court's ruling. *Harn*, 506 N.W.2d at 94 (citing *Lamp*, 496 N.W.2d at 583; *Waddell*, 471 N.W.2d 591).

Satterlee alleged the Johnsons had negligently failed to: (1) provide a reasonably safe workplace; (2) properly supervise the branding operation; (3) provide adequate instructions under the circumstances of this branding operation; (4) allow Satterlee to step clear of the branding area before releasing the branded calf; (5) warn Satterlee that the branded calf was going to be released immediately before Satterlee stepped clear of the branding area; (6) use or instruct in the use of reasonable alternatives in the branding operation under the circumstances then existing; (7) provide a suitable number of competent employees to perform the branding operation in a reasonably safe manner; (8) assist and aid Satterlee in the branding operation; and (9) refrain from using Satterlee in the branding operation given his physical limitations.

"Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony.... It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely." *Lamp*, 496 N.W.2d at 583 (citing *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991); *Wilson*,

83 S.D. at 212–13, 157 N.W.2d at 22). A review of the record shows that summary judgment was proper in this negligence case, because Satterlee himself failed to set forth any set of facts upon which his negligence claims could rest.

During his deposition testimony, Satterlee stated that there is a certain amount of risk of physical injury when working around cattle, including the possibility of being kicked or run over. Satterlee testified that he had participated in two other branding operations for the Johnsons prior to his injury, using essentially the same branding method used on the day of his injury. He further testified that the individuals present on the day of his injury were among the people working on these occasions.

Satterlee testified that Matt supervised these other operations and that he had told everyone their jobs and how the work was to be performed. When asked if Satterlee found anything wrong with the way Matt handled the previous branding operations, Satterlee responded:

> "No, I mean, that's the way they always do it. Everybody has got their own style and own means of doing it. I mean, everybody does it different. I mean, the way they do it is the way it's been done for years. I mean, it was done different than we do it back home but that doesn't mean it's the right way or the wrong way."

Satterlee stated that on these other occasions, after working the calves, they were turned loose, and allowed to get up and run or walk away in the corral. Satterlee acknowledged that some calves are agitated after being worked. He stated that some calves are calm while others are "mad," and "get up and just beller and run." He further stated that one has to anticipate the calf might be angry when it has been branded and that the calves want to get away from the people holding them after they have been branded.

Satterlee testified that the branding operation on the date of his injury was "basically going to be the same as it always was," except that Satterlee would not be holding any calves because of his back injury. He

said this method of work was agreeable to him.

From his prior experience in branding operations, Satterlee knew that when the "working" was completed, the individuals holding the calf would release it. He stated that when he finished working the calf on the day of his injury, he knew that Matt and his wife were going to release the calf. Satterlee indicated that on previous occasions he stayed in the corral when the calves were turned loose, and that he intended to remain in the corral on the day he was injured. He stated that he did not think he would have any problem stepping out of the way if the calf ran at him, because he believed he was capable of moving to avoid the calf. Satterlee further testified that he did not have any idea that, by simply turning and jumping, he would injure his back as he did.

Satterlee indicated that Matt had told everyone what to do and that everyone who was involved in the branding operation on the date of his injury knew their jobs and had done them before. He believed Matt had given everyone the instructions they needed to do their jobs. Satterlee said the people involved in the operation were able to perform the work that was required of them. He also believed he was going to be able to participate in the branding operation without any problems.

The testimony given by Satterlee at his deposition provides significant support for Johnsons' defense. Meanwhile, there is a conspicuous absence of testimony supporting his negligence claims.

When Johnsons moved for summary judgment based on statements contained in Satterlee's deposition, Satterlee submitted his own affidavit in resistance thereto. Satterlee, as the nonmoving party opposing a motion for summary judgment, "must present specific facts which demonstrate the existence of genuine, material issues for trial; mere allegations are not sufficient to preclude summary judgment." *Mackintosh v. Carter*, 451 N.W.2d 285, 286 (S.D.1990) (citing *Laber v. Koch*, 383 N.W.2d 490 (S.D. 1986)).

Satterlee's affidavit fails to create any genuine issue of material fact. The affidavit reiterates the undisputed facts, such as the extent of his damages and the method used in branding the calf, without setting forth specific acts or omissions by Johnsons or their employees which would expose Johnsons to potential negligence liability. Satterlee does add that "I did not feel that I could tell Matt Johnson what I would or would not do. I did not want to lose my job." However, these statements simply suggest that Satterlee was reticent about declining work; they do not identify any behavior by the Johnsons that would reinforce his negligence claims.

Affirmed.

WUEST, AMUNDSON and KONENKAMP, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

Defendants are not entitled to summary judgment unless they can show that there are no genuine issues of material facts. *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989). Taking the evidence in the light most favorable to the nonmoving party, Satterlee, there are genuine issues of material fact as to failure to warn, sufficiency of warning, failure to permit Satterlee to completely remove himself from the interior of the corral before release of the calf and failure to use available safety equipment. "Summary judgment is an extreme remedy not appropriate for disposing of factual issues or as a substitute for trial." *Reeves v. Reiman*, 523 N.W.2d 78, 86 (S.D.1994) (Sabers, J., concurring in result in part and dissenting in part) (citation omitted). Therefore, defendants are not entitled to summary judgment. *Thiewes*, 448 N.W.2d at 2.